ESTHER BRUCHAL *vs.* PHILIP T. SMITH.

Third Judicial District, Bridgeport, April Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued April 9th—decided June 13th, 1929.

*Robert J. Woodruff* and *John G. Confrey,* for the appellant (plaintiff).

*Louis Feinmark* and *Jesse Greenes,* for the appellee (defendant).

HINMAN, J. The defendant is chief of police of the city of New Haven. On October 2d, 1925, a complaint and warrant was issued for the arrest of one Nick Spiak, alias Michael Fedorowitch, alias Joseph Novak, charging him with the crime of theft, which was given to a subordinate officer for service. The officer went to a room which had been occupied by Spiak, which he forcibly entered, and found therein some boxes with five dollar bills between green paper—a device used for swindling, some money, and four postal savings certificates in the name of Joseph Novak. Spiak was not there, nor has he since been found. The officer took the money and property to police headquarters and delivered it to the defendant as chief of police. It consisted of $285 in money, the four postal certificates, amounting to $1,000, and some personal wearing apparel, and other property.

On November 20th, 1925, the plaintiff, Esther Bruchal, brought an action (for breach of promise of marriage) against Spiak, with his various aliases, and caused garnishee process to be served on Smith, the defendant herein. In the original action the plaintiff had judgment on June 30th, 1926, and demand on execution was subsequently made on Smith, as gar-

nishee, and refused. The plaintiff thereupon brought this action of *scire facias*, claiming to be entitled, by virtue of foreign attachment, to the money and postal savings certificates, to respond to the execution.

The trial court found that this property was held by the defendant at the time of service of garnishee process, and has since been held by him, as chief of police, "to be used as evidence against Spiak, who is a fugitive from justice. It affords means of identifying Spiak as Joseph Novak, the postal savings certificates being in that name, and is necessary evidence against him in connection with the crime charged." Upon these facts it was held that "the defendant as chief of police is not liable by trustee process to a creditor for property taken in making criminal service and . . . held by him to be used as evidence in connection with criminal charges."

The appellant seeks to eliminate the finding that the property in question "is necessary evidence against him [Spiak] in connection with the crime charged." It appears to be undisputed that the alleged act on which the particular charge of theft which was the subject of the warrant issued was based was an attempt on the part of the accused to carry away certain money belonging to Miss Bruchal, the plaintiff, which attempt was frustrated and the money recovered. The defendant, who was called as a witness by the plaintiff, being asked if he was holding the cash and postal savings certificates as evidence in respect to this warrant, replied, "Not necessarily, no." However, he exhibited and explained the apparatus found in the room, which, he stated, was a swindling device for the pretended transmutation of white paper into genuine money, and testified, further, that the accused was wanted for perpetrating this scheme, and that the money was being held "as evidence to present in

court . . . when we apprehend him." The plaintiff is entitled to the specific correction requested, but the court has also found, in effect, that the property, including the money, is held as evidence against Spiak on other criminal charges, as to which warrant may issue if and when he is located, and this finding is not attacked.

The single question of law presented by the appeal is whether property so taken and held is subject to garnishment in the hands of the defendant. By the great weight of authority, an officer, in the absence of express statutory sanction, cannot be held liable as garnishee for personal property taken from the possession of a defendant in a criminal case. The reasons stated in the opinions so holding include that to allow such garnishment would be to encourage the institution of unjustifiable criminal proceedings for the purpose of collecting civil obligations; that the property is *in custodia legis;* that it is contrary to public policy that a public officer should be subjected to the process of garnishment; that it would lead to collusion and fraud; that it would interfere with the officer's possession of property which might be necessary to be used as evidence in a criminal proceeding; that the possession of the officer is that of a bailee, or is, in fact, the possession of the accused. *Kuehn* v. *Faulkner* (1925) 136 Wash. 676, 241 Pac. 290, 45 A.L.R. 571, 572; notes, 16 A.L.R. 378, and 45 A.L.R. 574; 1 Freeman on Executions (3d Ed.) § 130a; 28 Corpus Juris, 76.

We find no occasion to determine as to the force and efficacy of some of these considerations as justifying a denial of the right of garnishment of such property, but think there can be no question of the propriety and necessity of according such protection as to property which is being held as evidence against

an accused person or as to which there is a reasonable probability that it will be so required, so long as such condition continues. Most of the decided cases pertain to property taken from the person of an accused upon his arrest or incarceration, but we perceive no valid distinction between property so taken and that obtained as in the present instance. Nor is there apparent any reason for discrimination between property retained as evidence with respect to the specific crime for which the arrest is made or sought and that connected with some other crime with which the possessor of the property is chargeable or upon which such further charge may be based. It seems that there could be no more typical example of property held *in custodia legis* than when it is so taken and retained for purposes of criminal prosecution against the owner or person in whose possession it is found. It follows that the trial court was correct in ruling that the property so held by the defendant was in the custody of the law and, in consequence, immune from garnishment. *Lewis* v. *Hopkins*, 96 Conn. 356, 114 Atl. 91.

This denial of the right of garnishment rests upon public policy, however, and such protection should not be accorded beyond the reasonable limitations which that policy suggests. In the absence of collusion or other irregularity in the proceedings, a creditor of the owner should not be prevented from resorting to the property after the purpose for which it is held by the officer has been satisfied, or the occasion for its utilization for such purpose has become so remote and improbable of occurrence as to justify a termination of the law's custody. *Lewis* v. *Hopkins, supra,* p. 360.

We have not, as have some States, a statute specifically subjecting property or money taken or detained as evidence in a criminal cause to the orders, as to

disposition thereof, of the court before which the cause is brought or pending, but courts have inherent power to direct that such property be returned to the owner, delivered up on his order, or otherwise disposed of, when it is no longer required for the purposes of justice. *Thatcher* v. *Weeks*, 79 Me. 547, 11 Atl. 599; *United States* v. *Parker*, 166 Fed. 137; *Wise* v. *Mills*, 189 Fed. 583, 110 C. C. A. 563; *Holker* v. *Hennessey*, 141 Mo. 527, 542, 42 S. W. 1090; 1 Bishop's New Criminal Procedure (2d Ed.) § 212; 5 Corpus Juris, p. 435. An officer may not hold indefinitely such property except, possibly, articles which can have only an unlawful use. *Thatcher* v. *Weeks, supra.* As applied to the present case, it seems that the court which issued the warrant in the attempted service of which the property in question was taken, and from which any further process would emanate, upon finding no reasonable prospect that the accused can be apprehended might well make an order as to the disposition of the property (as for its return to the owner) in consequence of which it might become subject to attachment by a creditor of such owner. *Lewis* v. *Hopkins, supra,* p. 361.

There is no error.

In this opinion MALTBIE, HAINES and BANKS, Js., concurred.

WHEELER, C. J. (dissenting in part). Judgment was rendered in favor of the plaintiff on June 30th, 1926, for $1500 against Spiak. In this action a copy of the writ was left with Chief of Police Smith as the agent, trustee and debtor of Spiak. Smith, upon due demand on execution taken out on the judgment, refused to pay this execution or any debt due from him to Spiak, and on September 1st, 1926, the plaintiff

brought this action of *scire facias* against Smith. It is found that Smith, as chief of police, had in his possession on October 2d, 1925, and has since held, certain property belonging to Spiak, taken from a room occupied by him by an officer under a warrant for the the arrest of Spiak for the crime of theft. This property consisted of four postal savings certificates in the name of Spiak, with three $5 bills between green paper of the kind used for swindling, and in a bag in this room one $100 gold coin bill of the United States, one $100 National Bank bill, one $50, one $20 and one $5 Federal Reserve bill, in all $280. So far as appears of record none of the $280 had anything to do with the crime charged, nor was it in any degree necessary evidence against Spiak for any swindling crime referred to in this case. The certificates afforded means of identifying Spiak, the $5 bills between green paper would also be evidence tending to prove a swindling charge against Spiak. The finding does not state that any of this money, not even the $5 bills between the green paper, was necessary evidence in connection with the crime of theft charged. The conclusion of the court drawn from the subordinate facts, that "the defendant as chief of police is not liable by trustee process to a creditor for property taken in making criminal service, and in his hands, held by him to be used as evidence in connection with criminal charges," if meant to state that this property was held for use in connection with criminal charges other than that of theft, is not supported by the subordinate facts. Assuming that the subordinate facts might have justified this conclusion as to the certificates and the three $5 bills between green leaves, they could not justify the conclusion that the $280 found in the bag were necessary for use as evidence in connection with a criminal charge. It is over three and a half

years since the chief of police obtained possession of this money. It is over three years since the plaintiff obtained her judgment against Spiak. No suggestion appears upon the record of a basis for the claim that the $280 is necessary for use as evidence in connection with any criminal charge. The $280 should not be immune from garnishment, since the ends of public justice are not thus served, while a private wrong is inflicted upon this plaintiff. The $280 was always properly subject to garnishment, since it was never properly in the custody of the law for use as evidence. When a record presents, as this does, the holding of moneys not needed for evidence to support a criminal charge for upward of three and a half years, we ought, in a *scire facias* proceeding, to cause judgment to be entered in favor of the plaintiff appellant for the amount of the moneys, $280, so held. There is no occasion for remitting the plaintiff to another court so far as concerns the $280 for a finding that there is no reasonable prospect that the accused can be apprehended, to be followed by an order as to the disposition of the moneys and this to be followed by another attachment of these moneys by this plaintiff.

I am of the opinion that judgment should be rendered in favor of the plaintiff for the $280, and that the rest of the property should be left, for the present, in the custody of the law.