MICHAEL A. PARLATO *v.* FREDERICK M. McCARTHY, EXECUTOR (ESTATE OF ROYAL W. PINNEY), ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, Js.

Argued June 8—decided October 25, 1949.

*Catherine J. Tilson* and *Frederick H. Wiggin,* for the appellant (plaintiff).

*Harold E. Drew* and *William F. Healy,* for the appellees (named defendant et al.).

*Louis Weinstein,* inheritance tax attorney, with whom, on the brief, were *William L. Hadden,* attorney

general, and *Frederic W. Dauch,* first assistant tax commissioner, for the appellee (defendant tax commissioner).

BROWN, J. On November 22, 1948, the Probate Court for the district of Derby by its order and decree found that the prorated tax, under § 315h of the 1945 Supplement to the General Statutes (Rev. 1949, § 2076), due from the plaintiff as a distributee of the estate of Royal W. Pinney was $18,246.37. The plaintiff took an appeal to the Superior Court. In his amended reasons of appeal he attacked the validity of the Probate Court's decree on the ground that the statutes upon which it was predicated were retroactive and unconstitutional. The Superior Court sustained the defendants' demurrer to the reasons of appeal and, upon the plaintiff's failure to plead over, rendered judgment for the defendants. The plaintiff has appealed to this court.

We summarize the material facts which stand admitted upon demurrer. The testator died January 31, 1945. On July 18, 1945, §§ 314h-319h and § 322h of the 1945 Supplement to the General Statutes, which are §§ 2075 to 2081 inclusive of chapter 102 of the General Statutes, Rev. 1949, and are frequently referred to as the "proration statute," became law. Section 2076 provides that federal and state estate taxes "except when a testator otherwise directs in his will . . . shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." Section 2081 specifies that "This chapter shall apply to estates of persons dying on and after July 18, 1944." The testator's will contained no reference to the source of payment of federal estate taxes.

By the testator's will, in addition to other bequests,

he left a general legacy of $72,000 to the plaintiff, and, of the residue, 50 per cent to the Griffin Hospital, 49 per cent in effect to his next of kin, first cousins, and the remaining 1 per cent to an individual legatee. The inventory value of the estate exceeded $1,500,000. The assets are sufficient so that after the payment of all debts, administration expenses and nonresiduary legacies, and after payment and provision made for all taxes, including the federal estate tax, a large residuary estate remains. Subsequent to July 18, 1945, the date when the proration statute became law, the executor paid the federal estate tax, pursuant to § 2077. As further alleged in the pleading demurred to, at the time of and prior to the testator's death, the federal estate tax under such circumstances was a charge upon and payable out of the residue of the estate. A pro rata share to the amount of $18,246.37 of the tax as paid is charged to the plaintiff under the decree appealed from, which was entered under the provisions of § 2079. Subject to the determination of the questions raised upon this appeal, the estate is substantially ready for distribution.

The plaintiff's claim is that the retroactive provision of § 2081, when read in connection with the rest of chapter 102, as applied to the federal estate tax upon the transfer of property of a testator who died before passage of the act, is unconstitutional. The gist of the plaintiff's argument is that, while the essential nature of the government's need to raise money by taxation might within constitutional limitations warrant the passage of such a retroactive statute under its power to tax, here the state was merely exercising its power over the devolution of property, and, since the statute impaired the vested right of the plaintiff to the legacy under the testator's will, it violates the due process clause of the fourteenth amendment to the constitution

of the United States and § 12, article first, of the constitution of Connecticut.

The parties are in agreement that an important consideration in determining the constitutionality of the proration statute is whether or not it is a taxing statute. This is because the courts, recognizing the power of taxation as an attribute of government essential to the raising of necessary revenue, hold that retroactive tax·laws may be valid even though they impair vested rights. See *Stockdale* v. *Insurance Companies,* 20 Wall. (87 U. S.) 323, 331, 22 L. Ed. 348; *Welch* v. *Henry,* 305 U. S. 134, 146, 59 S. Ct. 121, 83 L. Ed. 87, and cases cited; *Untermyer* v. *Anderson,* 276 U. S. 440, 449, 48 S. Ct. 353, 72 L. Ed. 645. Recognizing this principle, we have held that a statute imposing a succession tax can be made applicable to the transfer of the full title. and enjoyment of property which occurs upon distribution, although the statute becomes effective pending the settlement of the estate. *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 143, 161 A. 83.

The defendants claim that this is a taxing statute and that therefore, though retroactive in its effect, it is constitutional. Their reasoning as to the nature of the statute may be thus summarized: While it is true that the public purpose for which the tax is exacted is federal as distinguished from state, a taxpayer resident in Connecticut is subject to two taxing authorities, the United States and Connecticut. By the Internal Revenue Code, the former has levied the estate tax and made it a lien against and a charge upon everything in the decedent's gross estate, no matter to whom the estate may ultimately pass by will or inheritance, and when the tax is paid by the executor the federal government has left it "to the states to determine how the tax burden shall be distributed among those who share in the taxed estate." *Fernandez* v. *Wiener,* 326 U. S.

340, 346, 66 S. Ct. 178, 90 L. Ed. 116. "Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax." *Riggs* v. *Del Drago,* 317 U. S. 95, 97, 63 S. Ct. 109, 87 L. Ed. 106. Therefore the defendants urge the conclusion that, since Congress in imposing the tax left it to the states to determine how the burden of payment should be allocated at the distribution of the estate, the state statute which determines that allocation and so fixes the amount of the tax which each of the beneficiaries must pay constitutes a taxing statute.

Since the federal statute solely for federal purposes effectively imposed this tax upon the decedent's entire estate, the mere fact that Congress left it to applicable state law governing the devolution of property at death to determine its ultimate impact is insufficient to constitute the proration statute a taxing statute. Not only is the tax imposed by the federal law but its imposition and methods of collection are fixed by that law. They determine the primary obligation and they create an incumbrance on the estate. Nothing the state can do will alter the nature of the obligations created by them, or change the nature of those of the persons bound to pay, or affect in any way the methods of enforcement. All the state can do is determine the way in which the burden so fixed shall ultimately be apportioned among the beneficiaries, with such definition of the amounts payable as is incident thereto. The situation is in large measure analogous to one of contribution between defendants in a tort case; however the obligation to meet the sums due the plaintiff may ultimately be apportioned among them, his rights are in no way affected; he may use any or all; and con-

tribution cannot help or hinder him in enforcing his rights. It was neither the purpose nor the effect of the proration statute to raise money for the federal government, and neither before nor after its enactment was the estate tax a tax upon beneficiaries under a will. The proration statute is not a taxing statute. The context of chapter 102 confirms this conclusion, for by its terms it applies only after the executor "has paid" the tax (§ 2076), and the sole burden imposed upon beneficiaries or others is to pay him, not the government, where he has not in his hands property of the estate to meet the payment (§§ 2077, 2079).

It follows that, since the proration statute by its terms imposes upon the plaintiff the duty of paying a proportional part of the tax which prior to its enactment was payable out of the residue of the estate, and so admittedly is operative to impair the plaintiff's legacy under the testator's will, its retroactive provision, § 2081, must be held unconstitutional if the plaintiff's right in the legacy is a vested right. The broad wording of the statute is applicable both to testate and intestate estates, and to the devolution of both real and personal property. At the decedent's death his title to real estate at once descends to his heirs or devisees, and they have a complete right to receive it on distribution except as that right may be affected by certain definite limitations—the right of the executor or administrator to its possession during the settlement of the estate, and its sale, if necessary, for the payment of claims or expenses of administration, or its sale for the benefit of those entitled to it upon probate order and under definite conditions. In the case of personal property, the legal title passes to the executor or administrator, but he holds it under a quasi trust for those entitled to it; and at death they acquire a right to it which ripens into full title and

enjoyment on distribution, subject, however, to diminution or destruction if necessary to pay claims on the estate or the expenses of administration.  In the case of both real and personal property, the heirs, devisees or legatees at the decedent's death acquire definite rights, fixed in fact though capable of variation or destruction by reason of the charges which may be made against the property.  These rights have frequently been referred to by this court as "vested." They are at least definite fixed rights subject only to certain burdens which in turn are fixed by law.

For almost one hundred years this court has recognized that the right in the decedent's property which is transmitted upon his death to his successor under the law is a vested right of this nature.  This is made clear by these decisions selected from a number which might be cited: *Roorbach* v. *Lord,* 4 Conn. 347, 349; *Kingsbury* v. *Scovill,* 26 Conn. 349, 352; *Holcomb* v. *Sherwood,* 29 Conn. 418, 419; *Albertson* v. *Landon,* 42 Conn. 209; *St. John* v. *Dann,* 66 Conn. 401, 405, 34 A. 110; *Hale's Appeal,* 69 Conn. 611, 617, 38 A. 392; *Mitchell* v. *Mitchell,* 73 Conn. 303, 307, 47 A. 325; *Gerard* v. *Ives,* 78 Conn. 485, 489, 62 A. 607; *Ward* v. *Ives,* 91 Conn. 12, 17, 98 A. 337; *Bishop* v. *Groton Savings Bank,* 96 Conn. 325, 332, 114 A. 88; *Bowen* v. *Morgillo,* 127 Conn. 161, 168, 14 A. 2d 724; *Hardy* v. *Scott,* 127 Conn. 722, 723, 19 A. 2d 420; *O'Connor* v. *Chiascione,* 130 Conn. 304, 306, 33 A. 2d 336.  Although, as we have stated, the right which vests in the heirs, devisees or legatees upon the death of the decedent may be varied or destroyed by certain burdens fixed by law, the restricted scope of this possibility is well indicated by what this court has said in another case.  "Whatever real estate [the intestate] owned at the time of his death, vested immediately in his heirs, and could be taken from them only to satisfy some

claim existing against him in his lifetime, or some condition arising in the settlement of his estate which made the sale of land necessary or advantageous, and then only in the manner pointed out by law." *Dorrance* v. *Raynsford,* 67 Conn. 1, 6, 34 A. 706; and see *Candee* v. *Candee,* 87 Conn. 85, 87, 86 A. 758. In the instant case, under our law as established by the repeated decisions of this court referred to above, at the testator's death the plaintiff acquired a right subject to those fixed incidents which we have mentioned. A tax imposed pending the settlement of the estate might fall within those incidents, but the statute in question adds a further burden which does not so fall and which will reduce the amount he is to receive. It will therefore directly take from him something to which, by pre-existing law, he was entitled. This constitutes an impairment of a right which is within the word "vested" as that word is used in giving effect to the fourteenth amendment to the constitution of the United States. Moreover, § 2081 is repugnant to the provisions of § 2076, for while the latter section recognizes a right in the testator to direct by whom the tax shall be paid, § 2081 as a practical matter might be operative to deprive him of that right as to a will executed between July 18, 1944, and July 18, 1945. *State ex rel. Gray* v. *Quintilian,* 121 Conn. 300, 304, 184 A. 382. It is therefore our conclusion that § 2081 of the 1949 Revision, the retroactive provision of the proration statute, is unconstitutional.

A principal argument urged by the defendants in support of their claim that the retroactive provision of the statute is constitutional is that until distribution the property held by the executor is "in the custody of the law" so that the plaintiff had no vested right to be impaired. They rely upon the case of *Mechanics Bank* v. *Yale University,* 111 Conn. 452, 463, 150 A.

526, as authority for this proposition, including the phrase quoted. In that case the question was what the law of Ohio was with regard to this. We decided that it was as stated in the above proposition and quoted from an Ohio case which so holds. We went on to say that our law was in accord therewith. The latter statement was a dictum and was incorrect. Not only is there no decision by this court to this effect but the whole current of authority in this state is against the broad statement there made. Under our law, property in the hands of an executor or administrator is not "in the custody of the law," for the good reason that an executor or administrator is not an officer of the court. "Property is in the custody of the law when it has been lawfully taken by authority of legal process, and remains in the possession of a public officer (as, a sheriff) or an officer of a court (as, a receiver) empowered by law to hold it." Black's Law Dictionary (3d Ed.) p. 494; see *Bruchal* v. *Smith*, 109 Conn. 316, 319, 146 A. 491. This court has upon occasion used the expression "in the custody of the law" in a broader sense than we have stated; *Nettleton's Appeal,* 76 Conn. 235, 245, 56 A. 565; *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 147, 161 A. 83; but this does not constitute contrary authority. The plaintiff's legacy was not in the custody of the law but was being held by the executor, subject to payment of the charges against it, for delivery to the plaintiff as owner upon distribution, as already explained.

In arguing for the constitutionality of the statute, the defendants have referred specifically to three decisions of other jurisdictions. The one primarily relied upon is *Merchants National Bank* v. *Merchants National Bank,* 318 Mass. 563, 62 N. E. 2d 831, which holds that a Massachusetts proration statute which is

quite similar to the one before us and was enacted subsequent to the testator's death is constitutional. The court in that case does not specifically decide whether or not the Massachusetts act is a taxing statute, and, though it intimates that it is dealing with the question of the ultimate burden of a tax rather than its imposition, the opinion gives reason for inferring that the court recognizes no substantial difference between the two, and most of the cases relied upon are tax cases. It further emphasizes that the statute by reason of its wording did not operate retroactively in that case because payment, the fact upon which the tax was laid, occurred after the statute became operative. Another case relied upon by the defendants is *In re Jeffery's Estate*, 335 Pa. 15, 3 A. 2d 393. It is stated in the opinion in that case that the Pennsylvania proration statute is valid though retroactive. Since the court had already said that the trust deeds in question, when read with the will, themselves provided for apportionment of the taxes, its statement as to the validity of the statute must be regarded as a dictum. The third case discussed by the defendants is a decision of a New York nisi prius court, *Central Hanover Bank & Trust Co.* v. *Peabody*, 190 Misc. 66, 68 N. Y. S. 2d 256, 261. The court there held the Connecticut proration statute constitutional, relying solely upon the two cases above as authority. For the reasons we have stated, we are unable to apply the conclusions reached in these decisions to uphold the constitutionality of § 2081 of the Connecticut proration statute.

There is error, the judgment is set aside and the case is remanded to the Superior Court to be proceeded with according to law.

In this opinion MALTBIE, C. J., ELLS and DICKENSON, Js., concurred.

JENNINGS, J. (dissenting). The intent of the General Assembly in drafting the proration statute is clear and its purpose meritorious. The effect of the payment of the federal estate tax from the residuary estate was often to reduce unduly the amount going to residuary legatees who were intended to be the principal objects of the testator's bounty. Under these circumstances, "Our treatment of a question such as this, involving the act of a co-ordinate department of government, should not be circumscribed by the limitations of ordinary actions between individuals . . . . It is our duty to approach the question with great caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond reasonable doubt." *Beach* v. *Bradstreet,* 85 Conn. 344, 349, 82 A. 1030.

The majority opinion treats the question along broad lines: Does the retroactive feature of the statute unlawfully impair vested rights? In view of the well-established principle quoted above, I would frame the question with more regard to the specific facts of the case at bar: May the General Assembly change the impact of the federal estate tax on the devolution of personal property so as to affect legatees under a will, effective a reasonable time prior to the passage of the act?

If the issue is narrowed in this way, most of the Connecticut cases cited in the majority opinion are not in point because they concern real property. No Connecticut cases' are cited or have been found which answer the precise question in the negative. The only cases cited from other jurisdictions (New York, Pennsylvania and Massachusetts) answer it in the affirmative, and the New York and Massachusetts cases appear to be on all fours with the case at bar. It may be ad-

mitted that a legatee has, in a sense, a vested interest in his legacy, but that interest is subject to reduction or extinction because of such things as debts, administration charges and expenses, funeral expenses and taxes. ". . . we do not regard the full succession as having taken place upon the death of the decedent. The right to the ultimate title and ownership did arise at that time, and may be said to have vested in the beneficiary, but that was but one step in the process of succession, and the beneficiary does not become the actual and unconditional owner of the property until the estate has been administered and legally distributed and the succession consummated." *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 147, 161 A. 83. That case involved a tax rather than its allocation, but it indicates to me that the effect of the proration statute under consideration is not so different from the reductions resulting from the charges listed above as to require us to hold it unconstitutional. I shall not labor the point further. The excellent briefs are available to Connecticut attorneys, and a study of the Massachusetts case referred to (*Merchants National Bank* v. *Merchants National Bank,* 318 Mass. 563, 62 N. E. 2d 831) is particularly recommended.