## David C. Carmody, Administrator (Estate of Anna F. Roessler) *v.* Arnold Peck et al.

Superior Court     Judicial District of     File No. 240108
New Haven

Memorandum filed September 9, 1986

*David C. Carmody,* the plaintiff.

*Bercham & Moses,* for the named defendant.

*Stanley Twardy,* United States attorney, for the intervening plaintiff United States.

*Albert E. Sheary,* assistant tax commissioner, and *Morris L. Klein,* tax attorney, for the defendant tax commissioner.

*Harry M. Lessin,* for the defendant Slavitt, Connery & Vardamis.

*Berkowitz, Balbirer, Weisman & Lubell,* for the defendant Genovese and Massaro, Inc.

*DiPietro, Kantrovitz & Brownstein,* for the defendant G. & H. Poultry and Provisions, Inc.

MULCAHY, J. This is an action in the nature of an interpleader seeking a determination regarding priorities in the distribution of monies realized on the sale of real estate from the decedent's estate. Both the United States and the state of Connecticut have substantial claims for unpaid taxes. The action, as initially brought by the administrator, d.b.n., named both the state and the internal revenue service of the United States as party claimants. On November 25, 1985, the court, *D. Dorsey, J.,* dismissed the internal revenue service as a party defendant and granted the government's motion to file a complaint in intervention. Appropriate pleadings in response to that complaint have been filed by the following: David C. Carmody, administrator, d.b.n.; the tax commissioner, state of Connecticut; Arnold Peck, successor in interest to a mortgage deed, dated April 2, 1973, originally held by Connecticut National Bank; and the law firm of Slavitt, Connery and Vardamis (Slavitt), claiming legal fees earned in conjunction with the administration of the estate. All other parties have been defaulted.

This dispute has been submitted to the court upon stipulation, brief testimony and a number of joint exhibits. The information before the court establishes the

following facts: The decedent, Anna F. Roessler, died intestate February 28, 1969, and the decedent's son, Fred C. Roessler, her sole heir, was named the original administrator. The decedent's final federal income and estate tax returns were filed July, 1972. At that time, the internal revenue service had assessed the estate for nearly $400,000 in tax obligations. Thereafter, various payments were made in partial satisfaction of the tax indebtedness. On November 13, 1972, delinquency penalties and interest were further assessed in excess of $192,000.

At the time of her death, the decedent had ownership interests in several parcels of real estate. Among those parcels were two properties, 50 Edgehill Road and 324–326 Shelton Avenue, both in the city of New Haven. In 1975, these properties were sold with the authorization of the Probate Court, and the net proceeds from the sales were placed in escrow. On March 12, 1976, Herbert D. Fischer, Acting Judge of Probate for the district of New Haven, brought an interpleader action in the United States District Court seeking a determination regarding entitlement to the escrow fund (approximately $116,000 plus interest) resulting from the sale of these two parcels. Numerous parties were joined in that action including the United States by virtue of its claim for unpaid estate and fiduciary income taxes, the state of Connecticut because of its claim for unpaid succession taxes, and Slavitt with its claim of fees for professional services rendered on behalf of the estate.[1] Both Slavitt and the government filed motions for summary judgment asserting priority of their respective claims. The Slavitt motion was granted

---

[1] The federal court action was captioned: "Civil Action No. B-76-81, *Herbert D. Fischer v. Fred C. Roessler, Individually and as Administrator of the Estate of Anna F. Roessler, Deceased; The United States of America; The State of Connecticut; American Beef Packers Incorporated; William B. Meyer, Inc.; Woodbridge Bank and Trust Company; Genovese and Massaro, Inc.; and Slavitt, Connery and Vardamis, a partnership.*"

on the basis that its claim was entitled to priority as an administration expense. The government's motion was accompanied by its supporting memorandum of law wherein the priority of its claim was asserted on the basis that the estate was insolvent and, therefore, under §§ 191 (now 31 U.S.C. § 3713 [a]) and 192 (now 31 U.S.C. § 3713 [b]) of title 31 of the United States Code, the federal tax claim was entitled to first payment.[2] The government's motion was granted by the United States magistrate on December 1, 1980, "absent objection," and summary judgment was entered by the United States District Court ordering distribution to the United States, from the escrow fund, of the sum of $92,216.[3]

Also included in the estate of Anna F. Roessler were three parcels of real property located in Milford: 32 Bristol Terrace, 86 Maple Street, and West River Street. On April 2, 1973, Fred C. Roessler, individually and apparently as sole heir of the intestate estate,

---

[2] The motion for summary judgment was based on the Federal Insolvency Statute as it then existed. Section 191 of title 31 of the United States Code (now 31 U.S.C. § 3713 [a]) provided: "Whenever any person indebted to the United States is insolvent, or *whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied;* and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed." (Emphasis added.)

Section 192 of title 31 of the United States Code (now 31 U.S.C. § 3713 [b]) provided: "Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

[3] The state of Connecticut now claims that it did not object to the federal government's motion for summary judgment in Civil Action No. B-76-81 because of the government's special estate tax lien which applied for a period of ten years from the date of death. Cf. I.R.C. § 6324 (a) (1954).

had mortgaged the Milford real property to Connecticut National Bank to secure a note payable to the bank in the sum of $309,650 executed by him individually and as president of Roessler Packing Co., Inc.[4] On December 9, 1983, Connecticut National Bank assigned its interest in the mortgage to Maple Street Associates, a Connecticut partnership with its principal office in Milford, for $97,500.[5] The mortgage had been recorded on the Milford land records on April 3, 1973. The assignment was recorded January 4, 1984.

On June 20, 1985, the three Milford properties were sold by the administrator, d.b.n., with authorization of the Probate Court, to Maple Street Associates for $460,000. After the deduction of property taxes and closing costs, the net proceeds to the estate from the sale of the three properties were $302,282.47. As of the date of trial, the then current amount with accrued interest was $325,560.97. By written stipulation executed by all parties, the proceeds of the sale were placed in escrow by E. Michael Heffernan, Judge of Probate Court, pending final judgment in the present action. Pursuant to the stipulation, liens against the realty attached to the escrow fund with their respective priorities.

The following parties were asserting priority claims to the escrow fund: (1) the United States, on the basis of assessments of November 13, 1972, and October 6, 1976, and the outstanding federal tax lien filed June 4, 1979, in the total amount, as of May 20, 1986, of $1,956,797.70; (2) the tax commissioner of the state of Connecticut, on the basis of succession and transfer tax liens recorded December 23, 1974, for an undetermined amount; (3) Arnold Peck, by virtue of the Connecticut

---

[4] Fred C. Roessler subsequently died. Apparently, both he and the corporate entity were, at the time, involved in bankruptcy proceedings. The administrator, d.b.n., of his mother's estate was appointed April 23, 1980.

[5] Arnold Peck is the principal partner in Maple Street Associates.

National Bank mortgage, recorded April 3, 1973, in the amount, as of the date of trial, of $352,146.47; and (4) Slavitt, for legal fees.

The parties have stipulated on the record to the following pertinent facts: (1) The estate was solvent as of February 28, 1969, the date of the death of Anna F. Roessler; (2) the estate was insolvent as of April 23, 1980, the date of the appointment of the administrator, d.b.n.; and (3) Fred C. Roessler, the son of Anna F. Roessler, was the sole heir to the estate. It is further found, on the basis of the credible testimony presented, that the state of Connecticut never took possession of the Milford real estate during the administration of the estate by the administrator, d.b.n., and that its lien is inchoate.[6]

## I

### CLAIMS OF THE ADMINISTRATOR, D.B.N., AND SLAVITT LAW FIRM

Under Connecticut law, the expenses of administration are deductible items and are entitled to first priority. General Statutes §§ 12-350, 45-273, 45-204c.[7] Here, the

---

[6] At trial, the only testimony presented was that of the administrator, d.b.n., relating to the state of Connecticut lien and the matter of "possession."

[7] General Statutes § 12-350, entitled "NET ESTATE OF RESIDENT TRANSFERORS; DEDUCTIONS," provides in pertinent part: "In the case of the estate of a resident transferor, the net estate for the purpose of the tax imposed by the provisions of this chapter shall be ascertained by deducting from the gross taxable estate the following items . . . (f) reasonable compensation of executors and administrators and reasonable attorney's fees . . . ."

General Statutes § 45-273, entitled "DISTRIBUTION OF INTESTATE ESTATES," provides in pertinent part: *"After payment of expenses and charges,* an intestate estate shall be distributed by the administrator or other fiduciary charged with the administration of the estate . . . ." (Emphasis added.)

General Statutes § 45-204c, entitled "ORDER OF PAYMENT OF CLAIMS," provides: "On the final settlement of the estate, the court of probate shall direct the payment of claims against the estate to be made in the following

administrator, d.b.n., is claiming first priority for the expenses of administration, taxes to be paid by him to the United States and the state of Connecticut on the escrow fund's earned interest and capital gains, and attorney's fees. Slavitt is claiming reasonable fees for legal services rendered to the estate.

It is hereby found that the claims of the administrator, d.b.n., and Slavitt are proper expenses of administration, are entitled to first priority, and are to be paid initially from the escrow fund.[8]

## II

### COMPETING CLAIMS OF THE UNITED STATES AND THE STATE OF CONNECTICUT

The federal tax assessments were made on November 13, 1972 and October 10, 1976. The notice of federal tax liens was recorded with the town clerk of Milford, on June 4, 1979. The state succession and transfer tax liens were recorded December 23, 1974. Thus, the state filings were prior in time to those of the federal government.

Generally, the fundamental principle governing priority is that "the first in time is the first in right." *United States* v. *New Britain,* 347 U.S. 81, 85, 74 S. Ct. 367, 98 L. Ed. 520 (1954); *United States* v. *Estate of Young,* 592 F. Sup. 1478, 1482 (E.D. Pa. 1984). With respect to the priority of debts due the federal government, however, the general precept enunciated in

order: *First, the funeral expenses and the expenses of settling the estate;* second, debts due for the last sickness of the deceased; *third, all lawful taxes and all debts due the state and the United States;* fourth, all debts due any laborer or mechanic for personal wages for labor performed by such laborer or mechanic for the deceased within three months immediately before the decease of such person; fifth, other preferred claims; and last, all other debts allowed in proportion to their respective amounts." (Emphasis added.)

[8] Both principal creditors, the United States and the state of Connecticut, have stated in their respective briefs that they do not object to the first priority payment of administration expenses and attorney's fees.

*United States* v. *New Britain* is subject to significant qualification, by statute and otherwise. The government's tax liens are statutorily premised on §§ 6321 and 6322 of title 26 of the United States Code.[9] Under these sections, the government's "general" tax liens arise when assessed and continue until the tax liability is satisfied or becomes unenforceable. The state tax liens, on the other hand, although filed prior in time, remain inferior until they become specific, perfected or choate. *United States* v. *Equitable Life,* 384 U.S. 323, 327, 86 S. Ct. 1561, 16 L. Ed. 2d 593 (1966); *State* v. *Bucchieri,* 176 Conn. 339, 346–47, 407 A.2d 990 (1978). Here, the liens relied on by the United States are general tax liens arising under § 6321. These liens arose at the time of assessment; 31 U.S.C. § 6322; remain unsatisfied, and have not become "unenforceable by reason of lapse of time" since any period of limitation was extended by agreement to December 31, 1986. The state's claim that its liens are entitled to priority because the government's liens were special estate tax liens; 26 U.S.C. § 6324 (a) (1); which expired upon the passage of ten years is without merit.[10]

---

[9] Section 6321 of title 26 of the United States Code provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 6322 of title 26 of the United States Code referring to the "Period of lien," provides: "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

[10] The state here has contended that the federal special estate tax liens have expired while its inchoate liens have not; also, that the state's recorded liens are prior in time to the federal liens, citing *United States* v. *New Britain,* 347 U.S. 81, 74 S. Ct. 367, 98 L. Ed. 520 (1954).

A special estate tax lien arises upon the death of a taxpayer pursuant to 26 U.S.C. § 6324 (a) (1), which provides: "Unless the estate tax imposed

In this case, the government maintains that its general tax liens are entitled to priority over the state liens on the basis of the federal insolvency statute, 31 U.S.C. § 3713 (a) (1) (B), which provides in pertinent part: "A claim of the United States Government shall be paid first when . . . the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor."[11] As stated, the parties have stipulated that the Roessler estate was insolvent as of the date of appointment of the administrator, d.b.n. Clearly, the estate is insufficient "to pay all debts of the debtor (deceased)." The federal tax liability alone is $1,956,797.70, while the total value of the assets is less than $500,000. Tax obligations owing to the United States have long been recognized as "debts" for purposes of § 3713. *Price* v. *United States,* 269 U.S. 492, 499, 46 S. Ct. 180, 70 L. Ed. 373 (1926). ("The word 'debts' as used in R.S. § 3466 includes taxes.") The fact that the estate was solvent at the date of the decedent's death, as here stipulated, does not foreclose either the applicability, or priority effect, of § 3713. *United States* v. *Estate of Young,* supra, 1484–85.

by Chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by the court having jurisdiction thereof, shall be divested of such lien."

[11] Section 3713 of title 31 of the United States Code is the successor to §§ 191 and 192 set forth in footnote 2, supra. The predecessor provision containing substantially the identical language was § 3466 of the Revised Statutes (1875), so often referred to in the federal and state decisions. Cf. *Community Progress, Inc.* v. *White,* 187 Conn. 128, 132–33, 444 A.2d 1369 (1982).

The full text of § 3713 (a) (1) now reads: "A claim of the United States Government shall be paid first when—(A) a person indebted to the Government is insolvent and—(i) the debtor without enough property to pay all debts makes a voluntary assignment of property; (ii) the property of the debtor, if absent, is attached; or (iii) an act of bankruptcy is committed; or (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor. (2) This subsection does not apply to a case under title 11."

The state contends that its antecedent succession tax liens are entitled to priority because they were choate, i.e., specific and perfected, prior to the government's recordation of its notice of federal tax liens. The state argues that by recording its liens, it had done all that is required by state law, and nothing more remained to be done to effect a choate lien. *United States* v. *New Britain,* supra, 85–87, mandates that as between competing choate liens, priority is governed by the basic rule that "the first in time is the first in right." The determination of when a state interest has become sufficiently choate to defeat later federal tax liens is a matter of federal not state law. *State* v. *Bucchieri,* supra, 347. Application of the choateness tests requires that the competing lien of the state be definite in three respects: (1) the identity of the lienor; (2) the property subject to the lien; and (3) the amount of the lien.

Here, as the government points out, the state liens were not specific as to value or amount until after the filing of this action and subsequent to the filing of the federal tax liens.[12] More importantly, however, the question here directly involves the choateness standards required to defeat the priority afforded the government by § 3713 of the federal insolvency statute.[13] Where the debtor is insolvent, or an estate is unable to defray all the debts of the deceased, the choateness requirements exceed those expounded in *United States* v. *New Britain* and require that the state's liens be perfected by reducing the property to possession. *United*

[12] The actual state succession tax assessment is dated May 20, 1986, and sets forth total succession taxes due, plus interest, on that date, of $465,898.43. (Interest accruing at $46.98 per day after May 20, 1986). The assessment recites that the amount is to become final in sixty days unless, within that time, a written application is filed requesting a hearing on the computation. Therefore, as the government emphasizes, the state liens did not become definite as to amount until July 19, 1986.

[13] *United States* v. *New Britain,* 347 U.S. 81, 74 S. Ct. 367, 98 L. Ed. 520 (1954), did not involve insolvency.

*States* v. *Gilbert Associates,* 345 U.S. 361, 366, 73 S. Ct. 701, 97 L. Ed. 1071 (1953); *Durham* v. *United States,* 545 F. Sup. 1093, 1097 (D.N.J. 1982), aff'd, 720 F.2d 661 (3d Cir. 1983); *Nesbitt* v. *United States,* 445 F. Sup. 824, 831 (N.D. Cal. 1978), aff'd, 622 F.2d 433 (9th Cir. 1980), cert. denied, 451 U.S. 984, 101 S. Ct. 2315, 68 L. Ed. 2d 840 (1981). In *United States* v. *Gilbert Associates,* supra, 366, the United States Supreme Court stated: " '[S]pecificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor." Roughly thirty years later, a United States District Court observed, as have many other courts: "Although the United States Supreme Court has never dismissed the possibility that such an exception [perfected competing lien] might exist . . . the Court has nonetheless found every interest short of actual possession insufficient to overcome the effect of Section 191 [now § 3713]. A lien might meet the choateness standards set out in *United States* v. *New Britain* [supra], necessary to overcome a federal tax lien, but Section 191's [now § 3713] priority is measured by different standards." *Durham* v. *United States,* supra, 1096–97. Even more recently, the District Court of the Eastern District of Pennsylvania, quoting F. Kennedy, "From Spokane County to Vermont: The Campaign of the Federal Government Against the Inchoate Lien," 50 Iowa L. Rev. 724 (1965), stated: " 'Indeed, the Supreme Court has repeatedly reserved the question whether a perfected and specific lien in existence at the time of insolvency can survive attack under the priority statute. . . . After consideration of the Supreme Court's treatment of antecedent state-created liens against claims of federal priority, one commentator has concluded: "Until the Supreme Court actually recognizes a choate lien in a Section 3466 case,

the most reasonable assumption is that any lien confronting the United States under this section [now 3713] is inchoate and inferior." ' " *United States* v. *Estate of Young,* supra, 1484 n.17.

Here, although the state succession tax liens were recorded, the real property to which they attached was not reduced to possession. Therefore, the federal claims are entitled to priority over the state liens under § 3713 of title 31 of the United States Code.[14]

[14] The federal government, in the alternative, relied on the doctrines of res judicata and collateral estoppel, arguing that the summary judgment rendered by the United States District Court in Civil Action No. B-76-81; see footnote 1, supra, conclusively determined the issue of priority as between the United States and the state of Connecticut, and that the state now is bound by that adjudication.

The doctrine of res judicata holds that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. *Wade's Dairy, Inc.* v. *Fairfield,* 181 Conn. 556, 559, 436 A.2d 24 (1980). The principle of res judicata applies to the litigation of a claim that was previously litigated by the same parties or by those in privity; collateral estoppel is an element of res judicata applying to the relitigation of a particular issue and can involve parties that may be different from those involved in the initial litigation. *Carey* v. *Avco-Lycoming Division,* 163 Conn. 309, 317, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). Under the doctrine of res judicata, where the same cause of action is again sued on, the judgment is a bar to any claims relating to the cause of action which were actually made or which might have been made. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 196, 91 A.2d 778 (1952). "A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief . . . [e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." Id., 197.

It appears to this court that the claim of the United States in this case is identical to the claim it made before the United States District Court in Civil Action No. B-76-81; as stated, the brief filed in support of the government's motion for summary judgment argued priority under the Federal Insolvency Statute (§ 191, now § 3713). The State had the opportunity in the District Court to litigate the precise issue now raised, but chose not to; therefore, the government's motion was granted without objection. In

## III

### ARNOLD PECK/MAPLE STREET ASSOCIATES

The Connecticut National bank mortgage from Fred C. Roessler was recorded April 3, 1973, prior in time to the state's succession tax liens and the government's notice of its estate tax liens. Through the December 9, 1983 assignment by the bank of its interest in the prior recorded mortgage, Peck now claims priority over the federal and state tax liens.

The mortgage was executed by Fred C. Roessler, sole heir to the estate. Upon the death of an intestate owner, title to real property vests immediately in the heir(s), subject, however, to the right of administration. *Satti v. Rago,* 186 Conn. 360, 365, 441 A.2d 615 (1982). Although title to the real property passes at once through intestacy to the heir(s), such title is subject to being defeated if it becomes necessary for the administration of the estate that the land be sold to satisfy valid claims. *Parlato v. McCarthy,* 136 Conn. 126, 133–34, 69 A.2d 648 (1949); *O'Connor v. Chiascione,* 130 Conn. 304, 306, 33 A.2d 336 (1943). Accordingly, while Fred C. Roessler, as the sole heir, had a vested interest in the decedent's real estate, it was subject to being defeated or destroyed by claims of creditors of the estate. Both the United States and the state of Connecticut had, and continue to have, substantial valid claims against the estate which, to the extent estate assets are available, must be paid incident to the administration of the estate. See *Neuffer v. Hagelin,* 369 Ill. 344, 16 N.E.2d 715 (1938); *Moran v. Manning,* 306 Mass. 404, 28 N.E.2d 478 (1940); *Trenton Motor Co. v. Watkins,* 291 S.W.2d 659 (Mo. App. 1956).

my view, the prior judgment in Civil Action No. B-76-81 is conclusive of the priority issue raised here and, thus, the government is entitled to prevail, over the state, on its alternative ground also.

The estate of Anna F. Roessler is being administered at the present time by the administrator, d.b.n. Substantial claims by the United States and the state of Connecticut remain unpaid. Whatever title the sole heir had at the time he executed the mortgage was subject to the administrator's right to utilize the property to satisfy estate obligations. The mortgagee's interest, and that of its assignee, was no greater than the title of the mortgagor; that is, it is now subject to the administrator's right to use the property, or the proceeds from its sale, to satisfy the claims against the estate. Therefore, Peck's interest, or that of Maple Street Associates, is not entitled to priority over the claims of the United States and the state of Connecticut.[15]

## IV

### PRIORITY

For the reasons stated, it is hereby concluded that the priorities of the respective claimants to the subject escrow fund are as follows: (1) First priority includes administrative expenses and attorney's fees, including the fees of Slavitt, as approved by the Probate Court having jurisdiction over the estate; and (2) second priority includes the federal tax claims of the United States. All other claims must be left unsatisfied due to the insufficiency of the fund.

Since the administrator, d.b.n., estimates that federal and state income taxes on capital gains and interest, realized by the fund from June, 1985, amount to roughly $100,000, and that attorney's fees and other costs of administration will approximate $50,000, it is hereby ordered: (1) The administrator, d.b.n., set aside from the fund the sum of $150,000, to remain under the control and administration of the Probate Court

---

[15] The real property was mortgaged by Fred C. Roessler (individually, not as an administrator) without Probate Court authorization. General Statutes § 45-238.

for the payment of said administrative expenses including attorney's fees as approved by that court; and, (2) any portion of said sum, $150,000, which is not used to defray said administrative expenses, including attorney's fees, be applied by the administrator, d.b.n., to the second priority claim, that of the United States.