THE MECHANICS BANK ET AL., ADMINISTRATORS, C. T. A. (ESTATE OF CLARENCE E. BARTON) vs. YALE UNIVERSITY ET AL.

Third Judicial District, New Haven, January Term, 1930.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued January 30th—decided June 2d, 1930.

*Cleaveland J. Rice,* for the plaintiffs.

*Frederick H. Wiggin* and *Huntington T. Day,* for the defendant Yale University.

*Harrison Hewitt* and *William B. Gumbart,* with whom, on the brief, was *Mary E. Manchester,* for the defendant Maude E. Barton.

*Arthur W. Chambers,* as guardian and attorney, for the defendants Beverly Barton and Barbara Barton.

*James E. Wheeler,* for the defendant Oscar Stoehr, trustee under will of Clarence E. Barton.

WHEELER, C. J.   In Article Twelfth, sub-paragraph c of the will of Clarence E. Barton, the testator gives all "my stocks and bonds" in trust to pay to his wife, "so long as she remains my widow," the income therefrom for her use and that of "my daughter . . . and whatever other children we may have."

In sub-paragraph g, he directs the trustee to transfer

to the trustees of Yale University, for their own use absolutely, all of these stocks and bonds, "although these securities provide an income until my wife's remarriage, for my daughter Beverly and whatever other child or children we may have as well as for my wife," except that the trustee is to retain for each child $10,000, the cash income to be paid to each until each becomes eighteen years of age, when the principal sum shall be paid to each.

In sub-paragraph h, the testator provides that, after the death of his wife, "I give to my child or children surviving her, share and share alike, an income similar to that which I have above provided for my wife during her life," with power to sell such portion of the securities "and give to them the proceeds as in his opinion is reasonably necessary" for the thorough education of his children, and from the time the child becomes twenty-one, or if the education be completed before the child reaches that age, then from that time until the child reaches twenty-five to give the child an income of $3000 a year, "Provided, that no payment shall be made after completion of education or training which would give to any child more than his or her proportional share of the principal of my estate. If none of my children live to be twenty-five, I give, upon death of my wife and last surviving child, all my property to the trustees of Yale University absolutely."

Sub-paragraph (i) provides: "When the youngest of my children shall have reached her or his twenty-fifth birthday, if my wife be deceased, I give to each her or his proportional share of the principal, credit to be given by each for money received after completion of education or training."

Sub-paragraph (j) provides: "In event and at the time of my wife's death leaving no child or children surviving, I direct my trustee to give the above securi-

ties to the trustees of Yale University for their own use absolutely."

These and other paragraphs of the will may raise questions concerning the gifts to the children of the testator and those to the trustees of Yale University. The reservation does not ask our advice as to these matters and we shall not consider them.

Article Thirteenth of the will gives the residue of the estate of the testator to his wife absolutely. The estate of the testator's mother, who died on May 28th, 1919, about three months subsequent to the execution of the testator's will, had not been settled at the death of the testator on December 6th, 1925, and there remained at that time in the possession of the executor of the mother's estate three hundred and four shares of the stock of Proctor and Gamble Company of the then value of approximately $40,000, subject to the payment of expenses of administration amounting to about $10,000.

The questions upon which our advice is asked may be resolved to this: Whether the testator intended to bequeath these three hundred and four shares of stock, under Article Twelfth, sub-section c, to the trustee, or under Article Thirteenth to the wife of the testator?

The words "all my stocks and bonds" in sub-section c are to be read in their primary meaning unless that conflicts with the terms of the will when read in the light of the surrounding circumstances. The primary meaning of these words, by no process of expansion, can be made to include an interest in the residue of an unsettled estate, such as that of the testator's mother. Whatever interest the testator had in the shares of Proctor and Gamble Company which were a part of his mother's estate became a part of the residue of his estate unless they have been disposed of in some

other part of his will. This cannot be found in any other part of the will unless it be included within the term "my stocks and bonds" in sub-section c.

In the succeeding sub-section d of Article Twelfth, the testator gives the trustee certain discretion as to whether to give to his wife the income or to add to the principal stock dividends "declared upon any stocks owned by me at the time of my death." Manifestly any stocks owned by him are the equivalent of "my stocks" as used in sub-section c.

The gift, in sub-section h, of all his property in certain contingencies to Yale University included only the stocks and bonds given in trust to his trustee in sub-section c. If "all my property" included all his property not specifically disposed of other than those stocks and bonds, the residuary article was unnecessary.

The words "the above securities" in sub-section j and "the trust securities" in sub-section h, refer to the assets of the trust fund in the hands of the trustee after the death of the testator's wife and do not include in the gift to the trustee any securities other than the stocks and bonds in sub-section c. It is difficult to escape the conclusion that there is nothing in this will which indicates an intention on the part of the testator to make a gift of his interest in his mother's unsettled estate unless it be found in the gift to his wife in the residuary article.

In Article Eleventh the testator gave to his children, in the event that he predeceased his aunt, Sallie E. Barton, his remainder interest in certain bonds in which she had a life interest and he a remainder interest. From this it is apparent that the testator in giving an interest, whose enjoyment had not yet matured, knew that this was not included in his gift in sub-section c of "my stocks and bonds," and so made specific provision for this gift. The conduct and the

records of the testator to which we turn are strongly persuasive of his intention. In the two books entitled "Record of Investments and Income" kept by the testator of his possessions we find carried lists of his stocks and bonds, but under none of the numerous headings in these lists is found any entry, of his interest in his mother's estate, or to the securities held by it, or to his interest in any stock forming a part of her estate. We do find in the earlier of these books an undated, pencilled memorandum, under the heading "Memoranda," "P & G @ 115—residue of Mother's Estate." Undoubtedly this refers to Proctor and Gamble stock which the testator expected would constitute a part of the residue of his mother's estate and probably his estimate of its value at the time of his entry. It does not indicate that he intended to express by this memorandum a present ownership of this specific stock.

In a paper in his handwriting denominated "Balance Sheet as of July 1, 1925," under the heading "Stocks" appears a list of the testator's stocks. Under another heading, "Sundry," appears the item, "Interest in estate Clara R. Barton, Proctor and Gamble @ 122 $39,000." This is merely a designation of his anticipated interest in his mother's estate.

The entry upon his record book of investments and that upon his balance sheet show that the testator did not treat or regard his interest in his mother's estate as that of an ownership in the Proctor and Gamble stock in the possession of that estate, but rather as an expected interest in her estate when settled. He knew, and these entries are symbols of proof of his knowledge, that Proctor and Gamble stock in his mother's estate was not owned by him and was not a part of "my stocks" which he disposed of in sub-section c.

If the interest of the testator in his mother's estate

be included as a part of "my stocks" under sub-section c, the "Balance Sheet," taken in connection with the necessary expenses of settlement of the testator's estate and the allowances therefrom which, in substance, the testator must have been apprised of, disclose that in order to meet the debts and charges against his estate it would probably have been necessary to meet these obligations, in part, out of the real estate or from the proceeds of the sale of the stocks and bonds left in trust under Article Twelfth. The testator would not have been likely to have intended or even contemplated this result. There are other considerations which go far toward destroying the claim that the testator intended to include his interest in his mother's estate in "my stocks." His will was executed a few months prior to his mother's death. It is not reasonable to conclude that he intended to include in "my stocks," stocks which belonged to his mother, who was then living and with whose will and intentions regarding her disposition of her estate it does not appear that he was familiar.

For much of the period between the death of his mother and his own death he could not have known whether there would be a residue in her estate upon which her gift to him depended. At no time could he have known what number of shares of this stock would come to him from this residue. It is well to remember that one legacy of $25,000, under his mother's will, was paid three days before his death and of its payment he died in ignorance.

At his death the property remaining in his mother's estate would not have met the expenses of administration which remained unpaid unless a part of the three hundred and four shares of Proctor and Gamble Company then remaining were sold and the proceeds applied to their payment. Therefore the testator could

not have known the number of shares which would have become a part of the residue nor at any time have intended to dispose of by his will, or claim ownership to, any specific number of shares of this stock. It was clear at all times during the course of the administration of the mother's estate that some of the securities of the estate must be sold to pay the legacies and administration expenses, and that the number of shares of Proctor and Gamble stock which would remain was at all times uncertain.

The executor of the will of the testator's mother was given power, "and without order of court," to dispose of her securities and at liberty to determine which he should sell.

The gift of "my stocks," in sub-section c, comprises "any stocks owned by me [the testator] at the time of my death."

Ownership is evidenced by title, possession or right of possession, control and responsibility.

The testator did not have title, legal or equitable, to any of the stock belonging to the estate of his mother. His interest in this unsettled estate was determinable by the law of Ohio, where his mother's estate was settled. *Orlopp* v. *Schueller,* 72 Ohio St. 41, 58, 73 N. E. 1012, states accurately, we believe, the law of that jurisdiction: "So long as the estate remains unsettled, or at least until order of distribution is made, the property held by an executor or administrator as such, is in the custody of the law and does not vest in, or become the property of the heir or legatee." See also *Bowen* v. *Bowen,* 38 Ohio St. 426. Our own law accords with this, *Greene* v. *King* (1926) 104 Conn. 97, 102, 132 Atl. 411, as does the common law of this country. Woerner, Vol. 2, American Law of Administration (3d Ed.) 630.

This stock was not in the possession of the testator

at the time of his death but in that of the executor of his mother, nor did the testator have the right of possession since the estate had not then been settled and a distribution ordered.

The testator could not exercise any of the rights of an owner or possessor of the stock. Moreover, the statute law of Ohio gave this executor the authority to sell such bonds and stocks as was necessary to pay the debts of the estate. Section 10697 of the Ohio Code of 1921 as amended by Act of 1923, p. 57.

In addition the responsibility of ownership rested upon the executor and not upon the testator; for example, in behalf of the estate to pay a property tax upon this stock (*Safe Deposit & Trust Co. of Baltimore* v. *Virginia,* 280 U. S. 83, 50 Sup. Ct. 59); or an income tax on this stock; or a liability upon stock of the estate resulting from insolvency of the corporation issuing the stock. *Tourtelot* v. *Finke,* 87 Fed. 840.

The two minor children of the testator, provided their mother shall remarry, will lose, by the terms of sub-section g, Article Twelfth, all interest in these securities except the $10,000 specifically given to them, which having become a part of the trust fund will ultimately go to Yale University. We cannot conclude that the testator intended to disinherit his own infant children of so large a sum of money and give it to Yale University for the purpose, as counsel for the University urge, of preventing the remarriage of his wife. We should be especially reluctant to so hold if it be true, as counsel claim under sub-paragraph a, that, if his wife should elect not to take under the will, all his property would go to Yale, thus disinheriting his children entirely. We shall not stop to consider whether this construction of sub-paragraph a is the necessary construction or not, or whether it is in conflict with other provisions of Article Twelfth for

the benefit of these children. These questions are not before us, the contingency making them imminent has not arisen and we express no opinion upon them.

At the time of his death the testator had only an interest in the unsettled estate of his mother existent from her death; he had no present right to or ownership of the three hundred and four shares of Proctor and Gamble Company stock belonging to the estate of his mother.

From these considerations we conclude that it was the intention of the testator that his interest in the unsettled estate of his mother should become a part of the residue of his estate and should not become a part of the trust under Article Twelfth.

We have examined the cases cited by counsel for Yale University, but shall not review them. The underlying question is one of intention, which the facts of this case make clear and set it apart from the cited cases.

We answer questions B, C, D, E, F, and the first part of A, no, and the last part of A, that the said three hundred and four shares of stock now fifteen hundred and twenty shares or what remains thereof, with the increase therefrom or the proceeds therefrom with such increase after the payment of all administration expenses, passes under Article Thirteenth to the wife of the testator, Maude W. Barton.

In this opinion the other judges concurred.