MARGARET W. STAYTON, Executrix under the will of Leon B. Stayton, Sr., deceased and MARGARET W. STAYTON, individually, Plaintiff,

*vs.*

DELAWARE TRUST COMPANY, a corporation of the State of Delaware, LEON B. STAYTON, JR., and DAVID F. ANDERSON, guardian ad litem for ELEANOR V. STAYTON, Defendants.

*New Castle, January 20, 1965*

*Clyde M. England, Jr.,* of Killoran & Van Brunt, Wilmington, for plaintiff.

*Richard L. McMahon,* of Berl, Potter & Anderson, Wilmington, for defendants.

SHORT, Vice Chancellor: Plaintiff, executrix, seeks instructions as to the proper distribution of certain assets which have come into her possession. The case is before the court on cross motions for summary judgment based upon the pleadings, affidavits and stipulations of counsel.

Leon B. Stayton, Sr. (testator) died on December 18, 1961. By Paragraph SECOND (a) of his last will and testament, dated June 11, 1954, testator provided as follows:

> "All corporate stocks and debentures of every kind owned by me at my death and all real estate owned by me at the time of my death, including all buildings and improvements thereon and all rights and other interest pertaining thereto, I give, devise and bequeath unto the Delaware Trust Company of Wilmington, Delaware, or to its successors in TRUST NEVERTHELESS, to hold, manage, invest and reinvest the same, to collect the income arising therefrom and to pay over the net income thereof to my wife, Margaret W. Stayton, for the rest of her natural life, if she survives me."

The will provided that upon the death of his wife, Margaret W. Stayton, the trustee was to pay over two-thirds of the principal and accumulated income to his son, Leon B. Stayton, Jr., and the remaining one-third was to be held in trust for his daughter, Eleanor V. Stayton, for her support and maintenance, and at her death to be paid over to Leon B. Stayton, Jr.

Testator devised and bequeathed the residue of his estate to his wife, Margaret W. Stayton, "absolutely and forever if she survives me."

At the date of his death, Leon B. Stayton, Sr., was the owner of three parcels of real estate and had registered in his name shares of

stock in several corporations having an appraised value of upwards of $70,000.00.

On November 26, 1961 Florence V. Stayton, the mother of Leon B. Stayton, Sr. died testate. By her last will and testament, dated July 12, 1950, Florence V. Stayton devised and bequeathed a one-half interest in the residue of her estate to her son, Leon B. Stayton, Sr. The will appointed Leon B. Stayton, Sr. and his sister, Audrey Stayton Christfield, executors. They qualified as such executors but the estate remained unsettled at the time of the death of Leon B. Stayton, Sr.

On May 9, 1963 the surviving executrix of Florence V. Stayton, deceased, passed her first and final account and thereafter distributed corporate stocks having a value in excess of $70,000 to plaintiff, executrix, such distribution representing the interest of the estate of Leon B. Stayton, Sr. in the residue of the personal estate of Florence V. Stayton. The stocks so distributed were listed separately in the inventory of the estate of the testator which was filed on February 7, 1964. Plaintiff, executrix, thereafter filed her first account disclosing the payment of all debts. Her complaint requests the instructions of the court as to whether the stocks which she has received from the estate of Florence V. Stayton should be distributed to the trustee, Delaware Trust Company, or to herself as residuary legatee.

In support of her motion Margaret W. Stayton has filed affidavits of Leon B. Stayton, Jr., one of the defendants and the ultimate beneficiary of the trust provided for in Paragraph Second (a) of testator's will. One of these affidavits set forth the following facts: At the date of his death testator was 67 years of age and Margaret W. Stayton was 66 years of age; at that time, as well as at the date of the will, Margaret W. Stayton had a modest separate estate, though she held jointly with testator property consisting of a checking account, government bonds and a mortgage having a fair market value on the date of the testator's death of $32,843.36; that testator had suffered a heart attack in 1943 and was in a poor state of health thereafter; that on many occasions testator had expressed to his son, the affiant, "the very firm belief that he would predecease his mother." In his other affidavit Leon B. Stayton, Jr. produced a copy of a

letter written by testator to his mother dated February 7, 1956 in which testator set forth the property which was to compose the trust fund established by his will, naming specifically the companies in which he held stock, with the addition "and others," and in which letter language appears which might be taken as supporting the affiant's assertion of testator's belief "that he would predecease his mother." Further reference to this letter will be hereafter made.

There is also of record the affidavit of the attorney for the estate of Florence V. Stayton from which the following additional facts appear: that on December 18, 1961, the date of testator's death, it was apparent that the executors of Florence V. Stayton would be required to sell certain assets of the estate in order to pay debts and administration expenses, but that no decision had been reached at that time as to which assets would be sold; that subsequent to December 18, 1961, in the course of administration, the surviving executrix had sold stock worth approximately $14,000.00 to provide funds for those purposes.

None of the facts set forth in the affidavits mentioned are controverted by defendants. The parties have stipulated that on June 11, 1954, the date of testator's will, his mother, Florence V. Stayton, "was in a good state of health consistent with her age."

Plaintiff, Margaret W. Stayton, contends that in the circumstances appearing the stocks received by her, as executrix of testator's estate, from the estate of Florence V. Stayton, should be distributed to her as residuary beneficiary in any event, whether the will is construed according to the ordinary meaning of the language therein used, or in the light of surrounding circumstances. She argues first of all that testator did not "own" at the time of his death any stocks which were held in the residue of his mother's unsettled estate. She contends, also, that the surrounding circumstances, and particularly testator's belief that he would predecease his mother, militate against a construction that he intended such stocks to comprise a part of the trust created by his will.

Defendants contend that testator did "own" the stock which passed to his estate under the residuary provisions of his mother's

will. They also argue that it is clear from the terms of the will that testator intended to dispose of his entire estate, other than household effects and miscellaneous chattels, through the trust.

The question presented is: In circumstances such as here appear, what title or interest does one of two or more residuary legatees have in specific assets which constitute the residue of an unsettled estate? No Delaware case answers the question. Authority elsewhere is limited in number. But such cases as there are seem to agree that the residuary legatee has no title, legal or equitable, to any specific asset of the residue. Thus, in *Mechanics Bank v. Yale University*, 111 *Conn.* 452, 150 *A.* 526, a case factually similar to the present, it was held that testator, the sole residuary legatee of his mother's will, had, at the time of his death, only an interest in the mother's unsettled estate, with no present right or ownership of corporate stock belonging to that estate, and that the interest of testator in the mother's estate constituted a part of his residuary estate and not of a trust created by his will of "all my stocks and bonds." Since the case was one for construction of the testator's will, the court, of course, based its holding on intent as ascertained from "the terms of the will when read in the light of the surrounding circumstances." The circumstances, as noted, bore a marked similarity to those here appearing. Though the Connecticut court construed the interest of the testator according to a principle of Ohio law that so long as an estate remains unsettled, the property in the hands of an executor "is in custody of the law," I attribute little significance to that circumstance as the court had concluded, prior to any mention of what law determined the testator's interest, that he had no title, legal or equitable, to any stock belonging to the estate of his mother. Neither is it significant that in the later case of *Parlato v. McCarthy,* 136 *Conn.* 126, 69 *A.2d* 648, dictum in the Mechanics Bank case, to the effect that Connecticut law was in accord with the principle of Ohio law referred to, was repudiated. The Parlato case involved the question of the constitutionality of a proration tax statute. While the court discussed "vested rights" of heirs, devisees and legatees, the question here posed was not in issue, and there is no pretense in the majority opinion which could be taken to indicate that the result reached in the Mechanics Bank case was deemed improper, regardless of the law applicable to the case.

Whether or not property in the possession of an executor is, by the law of this State, in custody of the law need not be decided as I do not think that the answer to the question posed is dependent upon such a proposition. But see *Bowles v. R. G. Dun-Bradstreet Corp.*, 25 *Del.Ch.* 32, 12 *A.2d* 492, where this court said that possession of an executor "is regarded as being virtually in the custody and control of the court in which his letters were granted."

In *Attorney General v. Lord Sudeley,* [1896] 1 *Q.B.* 354, a testator bequeathed one-fourth of the residue of his estate to his wife. While the estate was being administered, but before the amount of the clear residue had been ascertained, the wife died. The testator's estate included mortgages on real property which remained unrealized at the date of the wife's death, and no part of them had been appropriated to any particular shares of the ultimate residue. It was held that neither the wife in her lifetime, nor her executors after her death, could claim any part of the mortgages; that the only right of her executors as against the executors of the husband was to have the husband's estate administered. The court said: "It is evident that the * * * mortgages were not assets of Frances (the wife), nor was any part of them. Neither she nor her executors could claim any part of them in specie * * * The only right of Frances' executors was to call upon Algernon's executors to realize his estate, get in his outstanding assets, convert them into money, and, when the time for division arrives, divide such proceeds among the residuary legatees of Algernon. The executors of Frances could not compel Algernon's executors to transfer to them any of the * * * mortgages in respect of her one-fourth share of residue. That could only be done if these mortgages happened to remain unconverted when all debts and legacies were paid, and the residue became divisible, and all the residuary legatees agreed that the mortgages should remain unconverted * * * What, in law, is the interest of Frances' executors in the estate of Algernon? So far as such residue consists of personal property, that is a chose in action."

On appeal, the House of Lords affirmed in *Lord Sudeley v. Attorney General,* [1897] *AC* 11. Lord Herschell said: "I agree with my noble and learned friend [Lord Halsbury] * * * that the whole fallacy of the argument on behalf of the appellants rests on the

assumption that Mrs. Tollemache, or they as her executors, were entitled to any part of these * * * mortgages as an asset—she in her own right, or they as executors of their testatrix. I do not think that they have any estate, right, or interest, legal or equitable, in these * * * mortgages so as to make them an asset of her estate. What she had a right to—what they as her executors had a right to—was one-fourth of the clear residue of Mr. Tollemache's estate—that is to say, what remains of his estate after satisfying debts and legacies; and a bequest to them of one-fourth part of his residuary estate does not seem to me to vest in them or in her a fourth part of each asset of which that estate consists, as contended for on the part of the appellants * * * [U]ntil the estate is fully administered it is impossible to say of what assets the residuary estate will consist."

The same principle is announced in *Ex parte Dr. Bernardo's Homes,* [1920] 1 *K.B.* 468, *aff'd* [1921] 2 *AC* 1.

So, in the present case, on the date of the death of testator's mother, as well as on the date of testator's death, it was impossible to say of what assets the residuary estate of his mother would consist. It was evident that at the time of his death some of the stocks then constituting a part of his mother's residuary estate would have to be sold in order to pay debts and administration expenses and that the stocks which would remain could not then be determined. The bequest to testator and his sister of the residue of his mother's estate did not vest in either of them, or in their executors, a one half part of each asset which then constituted that residuary estate. Moreover, it is the duty of an executor to convert personal property not specifically bequeathed into cash. *Theisen v. Hoey,* 30 *Del.Ch.* 269, 58 *A.2d* 569; *Attorney General v. Lord Sudeley, supra; Macy v. Mercantile Trust Co.,* 68 *N.J.Eq.* 235, 59 *A.* 586; *Wright v. Holmes,* 100 *Me.* 508, 62 *A.* 507, 3 *L.R.A.,N.S.,* 769. See also, § 2336, *Title* 12, *Del.C.,* which provides that on a petition for distribution the Orphans Court may direct distribution in kind of "stocks, bonds or other securities, which for reasons satisfactory to the Court, have not been converted by the personal representative." And while a residuary legatee may, in satisfaction of his legacy, consent to accept securities from the executor, such acceptance "is considered as practically a conversion and sale by

the executor and a distribution of the proceeds by the executor." *Macy v. Mercantile Trust Co.,* supra. Or, as otherwise expressed, it is considered, in effect, a sale of the assets by the executor to the legatee and a set-off of the purchase money against the legacy. In re *Lepine* [1892] 1 *Ch.* 210; In re *Beverly* [1901] 1 *Ch.* 681.

But defendants contend that upon distribution by the executor, after the estate has been fully administered, of specific assets then constituting a part of the residue, the title thereto relates back to the death of the testator. This rule is stated in general terms by the text-writers See 6 *Page, Wills* 384; 96 *C.J.S. Wills* § 1100. However, examination of the authorities cited by these writers discloses that the principle has been applied in cases where third party rights are involved, as in *Hardesty v. Corrothers, D.C.,* 31 *F.Supp.* 365 (assessment on bank stock specifically bequeathed); and In re *Cress' Estate,* 335 *Mich.* 551, 56 *N.W.2d* 380, 36 *A.L.R.2d* 907 (inheritance tax on settlement of will contest), or where the rule against perpetuities is involved, as in *Braun v. Central Trust Co.,* 92 *Ohio App.* 110, 109 *N.E.2d* 476. In none of these cases was the court concerned with the question of title to specific assets constituting residue, but rather title to the "estate" bequeathed. The rule relied on is one of limited application and should not be invoked here. To the contrary, on the issue here presented it has been said: "In the case of a specific bequest at the time of the death of the testator there does exist the thing which he bequeaths. It may be a horse; he bequeaths that horse, and * * * the title of the legatee to the horse dates from the death of the testator. In the case of a residue the thing does not exist. As I have pointed out there is no such thing as a residue until the estate has been administered and the residue has been ascertained." Ex parte *Dr. Bernardo's Homes,* [1920] 1 *K.B.* 468. The quoted language was used in reversing a lower court ruling that upon distribution of a residuary estate the assent of the executor to payment thereof related back to the date of the testator's death.

Defendants contend, also, that the bequest of "stocks * * * owned by me at my death" is broadened by subsequent language appearing therein, namely, "and other interests pertaining thereto." This contention is without merit. The language last quoted is

obviously applicable to the devise of real estate contained in the same provision of testator's will.

■ ■ Defendants further contend that to construe the bequest to Delaware Trust Company as not including stocks which were ultimately distributed to the executrix would defeat the obvious intent of the testator as gathered from the terms of the will when considered in the light of surrounding circumstances. Here, as in every case where the court is called upon to construe the meaning of language in a will, it is the duty of the court to determine the testator's intent from the language used in the entire will when considered in the light of the circumstances known to and surrounding the testator at the time when the will was executed. *Bird v. Wilmington Society of Fine Arts,* 28 *Del.Ch.* 449, 43 *A.2d* 476. In the cited case the Supreme Court was concerned with the interpretation of a bequest of "all the stock which I may own in Joseph Bancroft and Sons Company." In considering the meaning of the word "own" Judge Rodney said that it "is a generic term embracing within itself several gradations of title dependent upon the circumstances. Its common meaning, as defined by Webster's New International Dictionary (2d Ed.) is 'to possess: to have or hold as property.' " That the testator here at no time had possession in his individual right of any stocks comprising the residue of his mother's estate is obvious. Neither did he have or hold the same as his own property. Therefore, it can not be said that according to the common meaning of the term, in which sense it was presumptively used, he "owned" at the time of his death any specific stocks of his mother's estate. By their contention defendants are, in effect, saying that in the circumstances here appearing the words "owned by me at my death" should not be construed according to their ordinary meaning, but so as to include therein particular stocks which constituted a part of the residue of the unsettled personal estate of his mother.

■ ■ In determining the intent of the testator with respect to language used in his will, the intent is determinable as of the date of execution of the will. On that date the testator here was in a poor state of health. His mother was then living and her health was good. It does not appear that he was familiar with the intentions of his mother regarding the disposition of her estate. He had frequently

expressed the belief that he would not survive his mother. In such circumstances, it is not reasonable to say that the testator intended to include within the phrase "all stocks owned by me at my death," stocks which might, after his death, come into the hands of his executrix as part of a legacy of the residue of his mother's estate. *Mechanics Bank v. Yale University, supra.*

But defendants say that since it appears from the inventory filed during the administration of the testator's estate that all property, except furniture, "of which testator had a choice of disposition" was left to the trust, it was his obvious intention to dispose of his entire estate, except household effects, through the trust. Of what assets testator's estate consisted at the date of his will does not appear, except as reference may be made to the letter addressed by the testator to his mother dated February 7, 1956 as hereinbefore referred to. Any reference to that letter, insofar as the present contention is concerned, would bear upon the intent of the testator as to the meaning of the language of the will and the comprehensiveness of the legacy. Moreover, it bears date many months after the date of the will and there is no showing that the letter was ever sent to or received by testator's mother. Defendants cannot, therefore, rely upon the letter as indicative of the intent asserted. *Bird v. Wilmington Society of Fine Arts, supra.* But assuming that testator's assets were the same on the date of his will as at the time of his death, the fact that he saw fit to dispose of the major portion of his estate through the trust, while entitled to consideration, does not warrant the distortion or enlargement of a definitely restrictive description, particularly where, as here, the will contains a gift of residue. *Irelan v. Hammond,* 26 *Del.Ch.* 181, 25 *A.2d* 454.

I conclude, therefore, that the bequest to Delaware Trust Company did not include any stocks which the executrix of the estate of Florence V. Stayton distributed to plaintiff, as executrix under the will of Leon B. Stayton, Sr. Accordingly, plaintiff, executrix, is instructed to distribute the stocks received by her from the executrix of the estate of Florence V. Stayton to herself as residuary legatee under the will of Leon B. Stayton, Sr.

Order on notice.