231 A.2d 491.

RHÒDE ISLAND HOSPITAL TRUST COMPANY, *Trustee u/d of* CHARLES R. FORREST *vs.* ARTHUR N. VOTOLATO, JR., *Adm'r c.t.a.,* ESTATE OF CHARLES R. FORREST *et al.*

RHODE ISLAND HOSPITAL TRUST COMPANY, *Trustee u/d of* HARRIET T. FORREST *vs.* ARTHUR N. VOTOLATO, JR., *Adm'r c.t.a.,* ESTATE OF HARRIET T. FORREST *et al.*

SAME *vs.* SAME.

JULY 14, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

468

KELLEHER, J. These actions have been brought by the plaintiff trustee and certified to us pursuant to the provisions of G. L. 1956, §9-24-28, as amended, for this court's instruction as to the disposition of certain assets held by the plaintiff as trustee of three inter vivos trusts established in 1911 and 1913 by Charles R. Forrest and his wife, Harriet T. Forrest, both now deceased.

Sometime after oral arguments were heard in this case, plaintiff trustee, pursuant to our permission, filed a supplemental brief. We thereupon permitted defendants to file such reply thereto as they deemed necessary. The court also requested that the record herein be supplemented with certain information as to the grandchildren of the settlors. Receipt of the briefs and the requested information is acknowledged. The court is appreciative of the diligence and cooperation exhibited by counsel in this regard.

We deem it necessary to set forth the pertinent facts of the Forrest family history which are relevant to the issues before us. In addition to the parents, the Forrest family consisted of five children, four daughters and one son.

On December 10, 1902, Charles R. Forrest executed his last will and testament and by its sole dispositive provision gave his entire estate to his wife, Harriet T. Forrest. On April 24, 1911, Harriet T. Forrest executed an inter vivos trust in which she reserved to herself for life the income from said trust and provided that the trustee then in its discretion could apply the income for the benefit of her son, George, during his life. Thereafter Mrs. Forrest gave the income for life to her daughters, Helen, Madeleine, Elsie and Virginia.

On June 5, 1911, Charles R. Forrest executed an inter vivos trust reserving for himself the income from said trust. When he died, the income of the trust was to be paid to his daughters in equal shares until the death of the surviving daughter.

Charles R. Forrest died on October 6, 1912, and over a year later on December 29, 1913, Harriet executed a second inter vivos trust which provided, as in the 1911 trust, that the income be paid to her for her life. Upon her death the income from this trust was to be paid in equal shares to the daughters until the death of the last surviving daughter.

All three trusts provided for the distribution of principal upon the decease of the last surviving daughter in substantially the same manner. It was to go to the children and more remote lineal descendants of the daughters who were then living and who would have been entitled to inherit if the settlor had died intestate immediately after the last daughter. Each trust contained a provision that no adopted child should be entitled to receive any share thereof.

In March 1915 Harriet T. Forrest amended both the 1911 and 1913 trusts. The provisions of these amendments are not material to the issues to be resolved in the instant causes. Thereafter, on June 21, 1915, Mrs. Forrest executed her will in which she made various testamentary dispositions of her property.

At the time of Harriet Forrest's death on November 8, 1920, she was survived by all of her five children. Except for her daughter Madeleine, none of the five children had issue. Madeleine was the survivor. She died on September 17, 1963. Although Madeleine had married and had issue, the issue predeceased her. As a result of this unfortunate incident, each of the trusts failed because none of them contained any provision for the eventuality which has occurred, that is, the death of all the daughters without any issue of them surviving.

The plaintiff alleges that in these circumstances it is uncertain as to the distribution of the principal in each of the three inter vivos trusts and therefore commenced the instant actions.

All the parties have agreed that Rhode Island law shall be applied to determine the persons who will benefit under the resulting trusts. In this regard the issue is whether we should invoke the rule enunciated by this court in *Industrial National Bank* v. *Drysdale*, 83 R. I. 172, 114 A.2d 191, and reaffirmed in *Industrial National Bank* v. *Drysdale*, 84 R. I. 385, 125 A.2d 84, and accordingly impose a resulting trust in favor of the next of kin of Charles R. Forrest and Harriet T. Forrest, or whether these particular assets should revert to the respective estates of the settlors and be distributed by the appropriate provisions of their respective wills.

If *Drysdale* is not applicable, we must then ascertain which clause of the will of Harriet T. Forrest is dispositive of the assets presently in the possession of plaintiff. Since Mrs. Forrest died a resident of Connecticut, we will, in construing her will, apply the appropriate Connecticut law.

After a careful consideration of all facets of these causes and the well-documented and researched positions of the several claimants to the undisposed trust assets, we are of the opinion that the *Drysdale* rule is not applicable. In *Drysdale* the testator bequeathed $10,000 to a trustee to pay the income in equal portions to a charitable organization, The People's Mission, Incorporated, and then left his residuary estate to certain individuals. The trust had been operating for 18 years when it terminated because the corporate charitable beneficiary had been dissolved. In the first *Drysdale* case we held that the testator had demonstrated a specific charitable intent to aid the mission exclusively and not the poor generally. Therefore, we said the doctrine of cy pres was not applicable and thereupon

we ruled the gift *lapsed* and the trust fund reverted to the next of kin by way of a resulting trust. We pointed out in the second *Drysdale* case that when we employed the term "lapsed," we were not using that term as it is used in the law of wills. We held that under the law of wills a legacy lapses and falls into the residuary only when the intended legatee dies before the testator and there is no express limitation or bequest over. Upon reflection, it is our opinion that much of the misunderstanding as to our holding in *Drysdale* comes from our use of the term "lapse" in a manner different from its usual connotation when it is associated with a testamentary disposition. Being possessed of 20/20 hindsight, we admit now that it might have been better if instead of the word "lapsed," we had used the word "failed."

After our opinion was filed, we granted a reargument, and in the second *Drysdale* case, we adhered to our earlier ruling. In his opinion, which was rendered after a hearing on the reargument, the late Chief Justice Condon pointed out that when the first *Drysdale* opinion stated that the trust funds reverted to the testator's next of kin, it meant next of kin and not his residuary legatees. It was clear in *Drysdale* that the gift had vested in the trustee some 18 years prior to the dissolution of the beneficiary. It was also evident that so far as the testator was concerned he did not intend that any other clause of his will was to affect this particular bequest. The title to the trust fund remained vested in the trustee and could not be divested except by an act of law creating a resulting trust. In an effort to place the parties as near as possible in *statu quo* in *Drysdale* we applied the trust fund for the benefit of the next of kin without regard to the testator's will since this was an equitable estate which arose by operation of law and not by a supposed intention of the testator. While some of defendants have urged us to adopt the *Drysdale* rule in these causes, we believe after a careful analysis of both

*Drysdale* cases, having due regard for the facts set forth therein, that the principle of law they contain is limited in its application to the circumstances present in *Drysdale,* to wit, where there has been a failure of an operating testamentary charitable trust which had vested in the trustee and where there is no general charitable intent evidenced by the testator.

In *Drysdale,* the fact that the gift was created by a testamentary instrument allowed us to base our decision on the reasoning of *In Re Slevin,* 2 Ch.L.R. 236. There a bequest was made to an orphanage. The orphanage was in existence before and after the testator's demise but it went out of existence before the legacy could be paid over. The English court rejected the contention that the legacy had lapsed and became part of the residuary estate. The rights between a particular legatee and the residue are fixed, it said, at the time of the testator's death. In *Drysdale* we adopted this reasoning and held that it was equally applicable when title had vested in the trustee. Moreover, we emphasized in *Drysdale* that there was a charitable trust which had been operating and from the record there was no evidence indicating that the testator's gift should revert to the residuary estate. This being so, we described the trust property as having been well disposed of.

The facts in the cases at bar do not permit the application of the *Drysdale* rule. We are concerned here in each instance with the failure of an inter vivos trust and the disposition of the assets. In resolving this issue the most reasonable solution can be found in 2 Restatement, Trusts 2d, §411, p. 333, which states in part as follows:

"General Rule"
"Where the owner of property gratuitously transfers it and properly manifests an intention that the transferee should hold the property in trust but the trust fails, the transferee holds the trust estate upon a resulting trust for the transferor or his estate, unless the

transferor properly manifested an intention that no resulting trust should arise or the intended trust fails for illegality.
"* * *

"*b. Transfer inter vivos.* Where the owner of property gratuitously transfers it inter vivos upon a trust which fails, the transferee holds it upon a resulting trust for the transferor.
"* * *

"*k. Subsequent failure of trust.* The rule stated in this Section is applicable not only where an intended trust fails at the outset but also where a trust is created which subsequently fails. Thus, if the owner of property transfers it in trust to pay the income to one beneficiary for life, and on his death to convey the principal to others, and the disposition of the principal is on a contingency which does not occur, there is a resulting trust for the transferor or his estate on the death of the life beneficiary."

The above rule, we believe, finds support in 2 Restatement, Property, §154, where it discusses a reversionary interest. We point to the illustration therein at page 529 in its discussion of §154, which reads as follows:

"7. A, owning shares and bonds worth $150,000, transfers them 'to B as trustee to hold for the life of C, paying the net income to C to the extent of $4,000 per year, and dividing the balance of the net income between D and E, children of C, remainder on the death of C, to the then surviving children of C.' A has a reversionary interest in the shares and bonds."

It is our considered judgment that the settlors, Charles and Harriet, had a reversionary interest in and to the separate trusts which was capable of being transferred by their respective wills. In each instance there was a grant of a particular estate designed to terminate upon the happening of a certain event (that is, the death of their daughters) with a contingent remainder (in this case, issue to be born who would take the remainder). There remained in each settlor a reversionary interest which was subject to being

divested upon occurrence of the above-described contingency.

Our actions herein are not without precedent. In *Angell v. Angell*, 28 R. I. 592, 68 A.583, this court was confronted with a fact situation closely akin to the causes at bar. In *Angell* there was an inter vivos trust whereby the settlor received the income during his life and upon his decease, three of his children were to receive their share of the corpus free of any trust while the remaining share was to be held in trust for the benefit of the settlor's son with the income to be paid first during his life and thereafter to the son's children. There, like here, no provision had been made for the disposition of the trust corpus upon the termination of the life estate. The settlor's will bequeathed his estate in four equal shares to his four children. Three shares were given outright while the fourth was held in trust for the life of the testator's son with a remainder to his children. We held that the undisposed remainder of the inter vivos trust passed under the grantor's will. What we said in *Angell, supra,* at 599, 68 A. at 586, is apropos here:

> "We can only judge of the intent of the settlor and testator by what he has left behind him; and in view of the imperfect and incomplete disposition of this trust fund under the deed, we think it was the manifest intention of the testator by leaving a will to have the trust fund disposed of thereunder."

Our holding here is in accord with the great weight of authority in this field. See Bogert, Trusts and Trustees, §468 (2d ed.), p. 675; 4 Scott, Trusts, §430.1 (2d ed.), p. 2986.

We acknowledge there is a statement in 54 Am. Jur., Trusts, §197, at page 154, which says that "It is a general rule of equity jurisprudence that where a donor conveys, either by will or deed, property on a certain trust or for a certain purpose, and the trust or purpose fails, a resulting

trust arises for the benefit of the donor if he is living, or, if the donor is dead, for the benefit of his heirs or next of kin * * *." An analysis of the following cases it cites in connection with this rule does not support such a broad statement of law. In *Witten* v. *Wegman,* 182 Ark. 62, 30 S.W.2d 834, a testamentary charitable trust had failed. Although a distribution to the heirs was ordered, it was done because there was no clause in the will which could be described as having disposed of the trust property. So, too, in the case of *Seran* v. *Davis,* 174 Okla. 433, 437, 50 Pac.2d 662, 666, the court stated, " 'If the conveyance be by deed, the trust will result in the grantor, if it be by will, the trust will result to the testator's residuary devisees or legatees, or to his heirs or personal representatives, according to the nature of the property and of the dispositions.' " As the case excerpts indicate, the opinions in *Witten, supra,* and *Seran, supra,* can hardly be considered as cogent authority for the proposition of law recited above from American Jurisprudence. While we customarily accord respect to the principles expressed in American Jurisprudence, we are constrained to conclude that in this instance the phrase "heirs or next of kin," as it appears in the section under discussion, has been imprecisely construed.

The supplemental brief and memoranda of law to which we referred earlier in this opinion concern the applicability of the ruling made in *Kelly* v. *Nichols,* 18 R. I. 62, 25 A. 840, to the instant case. Involved therein was the will of Joseph Greene which was executed in 1839 and provided in part that all Greene's "* * * real and personal estate whatsoever, and wheresoever to be found; particularly my farm on the island of Canonicut, known by the name of the Greene Farm * * *" be devised and bequeathed to certain trustees for the benefit of his unmarried sisters. After the death of the surviving sister, the trust was to continue for certain purposes which the testator evidently considered to be charitable in their nature.

The will also provided for several legacies and in its final dispositive provision gave and bequeathed to a cousin, Thomas B. Gould, books and papers and "* * * all my household furniture of whatever description, together with all the rest and residue of my estate and effects of every kind and nature not hereinbefore disposed of."

The heirs of Joseph Greene brought a bill in equity against the trustees asking that the trust be declared void and that the trust estates be conveyed to them. In an earlier phase of this case[1] the court, in disposing of a demurrer to the bill, determined that the primary purposes of the trust not being charitable in nature, the trust was invalid.

The issue in *Kelly* v. *Nichols, supra,* was who, in view of the finding of invalidity, would be awarded the assets of the stricken trust—the testator's heirs at law or his cousin, Thomas B. Gould, as the residuary devisee. The court ruled the heirs at law and not the cousin were entitled to the trust proceeds.

Although the ultimate result in *Kelly* is the same as urged by several defendants here, it is our belief, after a thorough examination of that case together with the authorities cited therein, that the court's decision was based upon rules of law not applicable here.

The trust corpus which was the subject of litigation in *Kelly* was real property. The governing factors in *Kelly* were the then prevailing legal principles which concerned the devolution of real estate. In its opinion, the court took pains to point out that both the execution of the testator's will and his death occurred prior to 1844 when the general assembly enacted a statute[2] which permitted the

---

[1] See *Kelly* v. *Nichols,* 17 R. I. 306, 21 A. 906.

[2] P. L. 1844, An Act in relation to Wills of Real and Personal Estate, Sec. 1, p. 231 (apparently during this time no chapter designation was accorded to any of the acts passed by the general assembly.)

devise of real estate acquired after the execution of one's will. At common law it was impossible to make a general residuary devise. A devise, no matter how broad and sweeping in its terms, was in effect specific; or rather it disposed of specifically what was not already expressed to be given by the will.[3] Accordingly, before 1844, it was clear that a void devise passed to heirs at law and not the residuary devisee.

We think it interesting that the court in *Kelly* referred to Perry on Trusts, §160a, and accordingly we set forth below a pertinent portion of this section found in the fifth edition (1899) of this scholarly treatise:

> "* * * If real estate was bequeathed upon trusts that were void, or that failed, the real estate did not pass to the residuary devisee, but resulted to the heir-at-law, for the reason that nothing passed by the gift of the residue except what was intended to pass, and a bequest of real estate for a particular purpose indicated a plain intention not to embrace it in the residuary bequest, and although it might be void or fail, yet it was so far operative as to indicate the intention of the donor not to allow it to pass under the residuary clause of the will. * * *"

Perry further states that a different rule was to be applied when personal property was the subject of a trust. Upon failure of such a trust, he says, the corpus would go to the residuary legatee. He also points out that various statutes had been enacted in both England and the United States so that real estate would be governed by the same rules as personal property.

---

[3]Schouler on Wills, (2d ed.) 1892, §521. This work is cited by the court in its opinion.

We believe, therefore, that the holding in *Kelly* is inapposite to the issue before us. The court there was concerned with the disposition of real property and its decision was based on the law of an earlier day. Here, the Forrest trusts are composed of intangible personal property and nothing said in *Kelly* is relevant or controlling in these circumstances.

It follows therefore that both Charles and Harriet Forrest had reversionary interests in and to the undisposed trust assets presently in the possession of plaintiff which can be conveyed by the appropriate provision of the respective wills. Charles' will presents no problem because he bequeathed his entire estate to his wife. Upon his death in 1912, his reversionary interest in and to his inter vivos trust was conveyed by his will to his wife.

It is the construction of the will of Harriet that presents us with the second issue to be decided here. Since she at the time of her death was a resident of Connecticut, the effect of her will on the trust assets will be determined by the law of that state. *Carr* v. *Railton,* 66 R. I. 225, 18 A.2d 646. Some defendants in the case claim that item 12[4] of the will is a general residuary clause and as such it operates to convey to them the reversionary interests which the decedent had in the three trusts. There are other defendants who contend that item 12 is not a general residuary clause, but instead, should be construed to be a clause which simply disposes of Harriet's tangible personal property and nothing else. Under this particular interpretation, those defendants would have us conclude that the corpora of the three trusts, since they are composed solely of stocks and

---

[4]"Item 12. I give and bequeath to my said daughters, Madeleine F. Burke, Elsie Forrest and Virginia Forrest, all the rest and residue and remainder of my estate, including pictures, furniture, rugs, books, silver, jewels, antiques, clothing, and all other articles of personal property not hereinbefore disposed of to be divided equally between them."

bonds, pass to them under the provisions of item 9.[5] Finally, there are other defendants who propose that still another clause in the will controls which of course results in their selection as beneficiaries over the competing parties. This last group bases their argument on the premise that item 9 governs and not item 12. Due to the view we take in this case, however, there appears no need for us to discuss the merits of the third proposition advanced.

We believe that item 12 of the will of Harriet T. Forrest is a general residuary clause and, as such, it effectively transfers all property of the decedent not otherwise disposed of, which in this case includes her reversionary interest in each of the inter vivos trusts created by either the testatrix or her husband.

Item 9 is not dispositive of the testatrix's interest in assets presently in the hands of the trustee. By its provisions the testatrix had bequeathed "* * * all stocks, all bonds, notes, and other evidences of indebtedness, of which I may die seized and possessed * * *" to the plaintiff as trustee. A chronological analysis of the record shows that Harriet executed her first trust indenture on April 24, 1911. She amended this instrument twice, once on March 18, 1915, and again on March 12, 1920. Her second trust in-

---

[5]"Item 9. Subject to the demand upon the income thereof under Item 8, I give and bequeath all stocks, all bonds, notes, and other evidences of indebtedness, of which I may die seized and possessed to the said Rhode Island Hospital Trust Company, IN TRUST, for the following uses and purposes: To be added to the trust created by me in Item 2 of this will, under my power of disposition, to become part and parcel thereof, and to be treated, as to its management, payment of income, and final division, as provided by me in this will with reference to said trust; and I hereby confer upon said Trust Company in respect of the property bequeathed to it in this paragraph the same powers to vary and change investments and of sale which I have given or attempted to give it in said Item 2, and I further expressly authorize and empower said trustee to retain any securities in the form in which they are held by me at the time of my decease, even though they are of doubtful value or hazardous, without being liable for any resulting loss."

denture was executed on December 29, 1913, and amended on March 4, 1915. Her will was executed on June 21, 1915. At this time she was the recipient of her husband's reversionary interest in and to his inter vivos trust and she was certainly aware of her two prior trust conveyances.

We hardly think it realistic to hold that when she executed her last will and testament on June 21, 1915, she intended to dispose of intangible personal property which she knew was part and parcel of three separate inter vivos trusts and which she had every good reason to believe had been effectively disposed of by the past actions of her and her late husband. When Harriet T. Forrest stated in item 9 of her will that she was bequeathing to plaintiff trustee "* * * all stocks, all bonds, notes, and other evidences of indebtedness, of which I may die seized and possessed * * *" she was not referring to any such items which had been conveyed to the trustee by either her or her husband. As far as she was concerned, the trustee and not she was "seized and possessed" of these assets. At the time of her death she retained only a reversionary interest which represented a future right to these assets which would happen if the trust failed. See In Re Bracalello's Will, 11 App. Div.2d 804, 204 N.Y.S.2d 969. The reversionary interests which are capable of being bequeathed by Harriet's will are not embraced by the terms of item 9.

The Connecticut Supreme Court in *Mechanics Bank* v. *Yale University*, 111 Conn. 452, 150 Atl. 526, in a case similar to these before us, ruled that a bequest of "all my stocks and bonds" did not carry with the testator's interest as residuary legatee of his mother's estate which was composed of several hundred shares of stocks. The testator died leaving a widow and children. His mother had predeceased him and at the time he died his mother's estate was still pending. The bequest of "all my stocks and bonds" was in trust with the income to be paid to the wife and children and upon certain contingencies the securities were to be

given to Yale. There was a residuary clause wherein the wife was the sole beneficiary.

The Connecticut court, 111 Conn. at 459, 150 Atl. 529-30, stated:

> "The words 'all my stocks and bonds' * * * are to be read in their primary meaning unless that conflicts with the terms of the will when read in the light of the surrounding circumstances. The primary meaning of these words, by no process of expansion, can be made to include an interest in the residue of an unsettled estate, such as that of the testator's mother. Whatever interest the testator had in the shares of Proctor and Gamble Company which were a part of his mother's estate became a part of the residue of his estate unless they have been disposed of in some other part of his will. This cannot be found in any other part of the will unless it be included within the term 'my stocks and bonds' * * *.
>
> "* * *
>
> "This stock was not in the possession of the testator at the time of his death but in that of the executor of his mother, nor did the testator have the right of possession, since the estate had not then been settled and a distribution ordered.
>
> "The testator could not exercise any of the rights of an owner or possessor of the stock. * * *"

The court concluded:

> "At the time of his death the testator had only an interest in the unsettled estate of his mother existent from her death; he had no present right to or ownership of the three hundred and four shares of the Proctor and Gamble Company stock belonging to the estate of his mother.
>
> "From these considerations we conclude that it was the intention of the testator that his interest in the unsettled estate of his mother should become a part of the residue of his estate and should not become a part of the trust [of stocks and bonds] * * *."

Our belief in this regard is strengthened when we study the language used in the last portion of item 9, where the

testatrix authorized the trustee to retain the securities "* * * in the form in which they are held by me at the time of my decease, even though they are of doubtful value * * *," is that the use of the term "held by me" makes it quite apparent that the securities Mrs. Forrest was referring to were of those which were in her actual physical possession and not to any reversionary interest she had in the securities which make up the three inter vivos trusts.

While the location of a residuary clause is not in and of itself determinative of its function, it is a factor to be considered when determining which provision in a will is the residuary clause. A residuary clause is usually the last dispositive provision in the will. 4 Bowe-Parker: Page on Wills, §33.47, p. 370. In Harriet T. Forrest's will item 12 is located in just such a position. In *State Bank & Trust Co.* v. *Nolan,* 103 Conn. 308, 328, 130 Atl. 483, 490, the court held:

> "In most cases a residuary clause, where there are other definite and important bequests, cannot be taken as the primary and principal factor determinative of testamentary intent; it is a catch-all, a refuse group; a provision which operates after the operation of the other provisions of a given will; its logical position is the same as its local position, at the end of the testamentary process, not at the beginning."

What is said about the location of a residuary clause is equally applicable to the language necessary to the inclusion of such a provision in a will. Although there is no particular phraseology or set form of words which is necessary to a residuary clause, we held in *Quinn* v. *McDowell,* 47 R. I. 314, 132 Atl. 888, that the words "rest and residue" in the absence of language showing a contrary intention mean the estate remaining after satisfying all previous gifts. The words, "rest, residue and remainder" in *City Bank Farmers Trust Co.* v. *Taylor,* 53 R. I. 126, 133, 163 Atl. 734, 737, were held to include all the estate left by the testator not previously disposed of by his will and signified

a complete disposition of all his property. The same conclusion as to use of like language has been reached in Connecticut. See *Raughtigan* v. *Norwich Nickel & Brass Co.,* 86 Conn. 281, 85 Atl. 517.

The use of the word "including" in item 12 enlarges not limits the scope of this provision. Thus in *Carr* v. *Railton, supra,* at 243, 18 A.2d at 654, we said: "'Including' is generally employed as a term of enlargement and not as one of limitation or enumeration and, when used in a will, it implies that something else is given beyond what is covered by the general language which preceded it."

We do not believe the fact that the testatrix enumerated certain items of property which were to pass under item 12 changes its character as a general residuary clause. In 4 Bowe-Parker: Page on Wills, §33.49, p. 375, it is stated that "Where a clause purports to pass the residue of testator's estate, and attempts to enumerate some or all the different items in such residue by way of example, the clause passes the entire residue, and is not limited to the items named." See also 72 A.L.R.2d 1173. Although there is no Connecticut case which expressly states this view, this statement appears to be the general rule, and there is no Connecticut case to the contrary.

In the case of *Martin for an Opinion,* 25 R. I. 1, 54 Atl. 589, which involved the construction of a clause similar in language to the one in the will of Harriet T. Forrest, we rejected a contention similar to the one made here by those who seek to invoke the provisions of item 9. We held there that the mere enumeration of some of the articles in a residuary clause does not alter the character of the legacy. The general rule, we said, is that a residuary legacy is general and not specific. This is equally true of the will of Harriet T. Forrest. We can discover no intent on her part to deprive item 12 of its general residuary character so as to limit its dispositive power. The assets of three inter vivos trusts created by Charles R. and Harriet T. Forrest fall

within the dispositive provisions of item 12 of the last will and testament of Harriet T. Forrest.

On August 7, 1967, the parties may submit for our approval a form of judgment in accordance with this opinion to be entered in the superior court.

*Arthur N. Votolato, Jr., pro se ipso,* as Administrator c.t.a.

Attorneys for certain other respondents:

*Edwards & Angell, Edward F. Hindle, James H. Barnett; V. Duncan Johnson.*

*Powers, Hall, Montgomery & Weston, Andrew C. Bailey; Hale & Dorr, John M. Maguire.*

*Hinckley, Allen, Salisbury & Parsons, Ronald C. Green, Jr., Jacques V. Hopkins.*

*Hooker, Alley & Duncan,* of counsel.

*Graham, Reid, Ewing & Stapleton, Joachim A. Weissfeld.*

*Robinson, Robinson & Cole, John M. Donahue,* of counsel.

*Gardner, Sawyer, Cottam & Gates, Edward W. Day, Jr.,* of counsel.

*Hatfield and Brady, Edgar W. Hatfield,* of counsel.